COLE v. THE BOARD OF SUPERVISORS OF JACKSON COUNTY.

1. APRIL ÉLECTION: COUNTY SEATS. The second section of chapter 21, Revision of 1860, providing for taking votes on the re-location of county seats at the *April election,* was not repealed by chapter 31, Revision of 1860; neither was it so amended thereby, as to require the taking of such votes at the October election.

2. BOARD OF SUPERVISORS. The Board of Supervisors may properly declare the result of such an election, at a special meeting called for the purpose of canvassing the votes, and the books, papers and records of the several county offices should be removed to the place declared to be the county seat, as soon thereafter as practicable. A nugatory order made by the Board at such a meeting, ordering the removal within a fixed time, cannot have the effect to render their proceedings invalid.

*Appeal from Jackson District Court.*

WEDNESDAY, APRIL 24.

*Booth & Graham* and *W. E. Leffingwell,* for the appellant.

*O'Conner, Bradley* and *Dunbar* for the appellee.

WRIGHT, J.—Plaintiff appeals from the order of the Hon. Jno. F. Dillon, judge of the 7th judicial district, dissolving

an injunction. The object of the bill is to restrain the supervisors of Jackson county, from removing the county seat of said county from Bellevue to Andrew, and in this court complainant makes two objections: *First*, That an election for the removal of a county seat, cannot legally be held on the *first Monday in April*; and, *Second*, That the order of removal made by the supervisors, was, under the circumstances, unauthorized.

This election was held under Art. 2, Ch. 21, Rev. 1860, p. 38; the second section of which provides that if a petition is presented at any term of a county court, signed by at least one half of all the voters in the county, as shown by the last preceding census, asking for a re-location of a county seat, at any one place therein named, said court shall order that at the next *April election* holden thereafter a vote shall be taken, &c. This act was passed January 22d, 1855, and the point made is that the April election as understood and defined at the time of its passage has been abolished and with it the right to order an election at that time for the re-location of a county seat. Or in other words, the argument may be stated thus: The term, "April election," as defined by the Code of 1851, means that holden on the first Monday of April, (section 237,) at which time certain officers were to be elected; this was changed by the law of March 23, 1858, (Rev. 1860, ch. 31 p. 77,) by which all officers, State and County, are to be elected in October of each year; and therefore that there being no April election, the act of January 22d, 1855, is in effect repealed, or if not, that such election must be held in October.

The act of 1855 is "an act in relation to county seats," and its whole object and purpose is to provide a means of enabling the people of a county to vote upon the subject of re-locating their county seat. There is no portion of it which relates to the election of officers or their qualification. It is true that section 7 provides that such election shall be held as elections for county officers, but this refers to the

officers who shall conduct it, the manner of making returns, canvassing the same, and matters of that character. Being then a special law for a specific purpose, if not expressly repealed by some provision of the general law of 1858, it must continue in force and effect, unless the language and scope of the subsequent act is equivalent to an express repeal. That there is an *express* repeal is not pretended. Nor is there any such conflict in the two acts, in our opinion, as that both may not stand.

It is a familiar principle that repeals by implication are not favored. Equally well settled is the rule, that if possible courts will give effect to several statutes upon the same subject. Applying these well recognized rules, what is there to justify the conclusion that the latter act is so repugnant to the first that both cannot stand? The latter act does not propose nor pretend to legislate upon the same subject as that contained in the first. It in no manner revives the former act and certainly was never intended as a substitute for it. It no where provides even that all elections, and especially those for special purposes, as contradistinguished from the election of state and county officers, shall be held in October, or at a time different from that fixed in the then existing statutes.

Now if the act of 1855 had provided that a county seat election should be held at the same time as that fixed for the election of district judge, or any township, county or state officer, then a change in the time of electing such officers, might involve a like change in the time of such special election. When however the *April election* is named, both statutes may consistently have force and effect, by construing this language as fixing the *time* for taking such vote, rather than as necessarily connecting it with the election *by name*, in such a sense as that no election therefor can be held if such April election is abolished, or if held, then at a time fixed by the new law for the election of those officers previously elected in April. And this is our view of the statute.

This harmonizes the entire legislation, which should always be done, rather than to adopt that construction which repeals or amends a statute by implication.

II.  It is in the second place objected that the Board of Supervisors, at a special meeting, held on the 8th of April, 1861, made an order for the removal of the books, records, &c., of the county, to Andrew, within forty days from that time; which order it is claimed they had no power to make at such special meeting.

It was the duty of the Board, if Andrew obtained a majority of all the votes cast, to make a record thereof and declare the same the county seat.   When this was done, it followed as a legal consequence that the books, records and documents belonging to the several county offices should be removed to the new seat of justice as early as practicable thereafter.   (Section 8, act of 1855.)   And though the board may have met under a call for the *special purpose* of canvassing the votes cast at said election, (section 309, Rev. 1860;) this necessarily carried with it the power to declare the result, and if in addition to this they fixed the time within which the records should be removed, we cannot conceive that this is any good reason for restraining such removal altogether. Grant that they had no power at such special session to make the order, the removal could be made, and is by the law required to be made, by the proper officers, without such order.   Such direction might therefore be treated as nugatory, and as a consequence would not vititiate the proceedings.

The order dissolving the injunction is affirmed.