Sheriff vs. Parish of Caddo.

## No. 162.

### JOHN LAKE, SHERIFF, vs. PARISH OF CADDO.

A sound and philosophical rule for the construction of organic as well as statutory law is to ascertain the mischief it was intended to remedy and so to construe as to effect the remedy. Expressions are not to be taken in their technical sense but rather in their common acceptation.

The Constitution has not used the words "criminal matters" in art 119 as importing "pending criminal causes" alone, but in a larger sense, and they include whatever appertains to sheriffs' services in criminal matters.

Sheriffs are not entitled to compensation for serving the venire for the several courts, because summoning jurymen for the trial of criminal causes is service in criminal matters, and the Constitution has provided a specific compensation for those services which cannot be exceeded.

APPEAL from the First District Court, Parish of Caddo. _Taylor_, J.

---

*Land & Land* and *Alexander & Blanchard* for Plaintiff and Appellee :

1. Sec. 6 of act 94 of 1873 provides that sheriffs shall receive from the several parishes for summoning jurors on venires the same compensation as is fixed by law for other summons, i. e., 50 cents for service and 10 cents mileage. Act 101 of 1870 ; R. S. of 1870, sec. 762.

2. Act 44 of 1877 does not repeal said section either directly or by implication. It is silent as to compensation of sheriffs and liability of parishes for same.

3. The summoning of jurors drawn on the general venire in the country parishes to serve in all classes of cases is not a service by the sheriff in "criminal matters" and is not within the purview of art. 119 of the Constitution of 1879. 30 Ann. 514.

4. When a charge for summoning a juror embraces the two items of serving the summons and mileage, an overcharge in the mileage does not forfeit the fee for the summons. "The item of fees so omitted or overcharged " is forfeited. Sec. 4 of act 101 of 1870. Statutes inflicting a penalty or forfeiture should be strictly construed.

5. Sheriffs are entitled to interest on their fees from date of rendition of services, and not from expiration of six months from said date. This provision applies to costs in pending suits, and in such it has been held that the costs were collectible under _fi. fa._, if judgment was rendered before the expiration of said term. 5 Ann. 650. Sheriffs' fees for summoning jurors do not require certificate of judge and clerk. 30 Ann. 514. They stand on same footing and should bear interest as any other debt.

---

*Wise & Herndon* for Defendant and Appellant :

1. Sheriffs have no right to charge for services rendered in criminal matters not included in the exceptions in art. 119 of the Constitution of 1879. Const. 1879, art. 119.

2. Act 44 of 1877 is the present jury law of this State. 35 Ann. 28, State v. Robert West.

3. The summoning of the jurors for the regular jury terms of the district courts of this State is criminal services rendered by the sheriff, and for which he receives no compensation except $500 for each representative the parish may have in the House of Representatives. Const. of 1879, art. 119 ; acts of 1877, No. 44 ; acts of 1870, act 101, sec. 2 ; Chitties Blackstone, 2 vol., 4 book, p. 351.

4. Act 101 of the acts of 1870 is the present fee bill[for sheriffs in civil and criminal matters, subject to a reduction of 50 per cent in criminal matters, as shown by act 7 of 1877, extra session.

5. The sheriffs' right to recover for fees and emoluments of office are prescribed by these years. Revised C. C., arts. 35, 38.

The opinion of the Court was delivered by

MANNING, J. The plaintiff is the sheriff of Caddo parish and sues for fees for serving the venire at the several terms of the District court for five years commencing with the September Term 1880 and ending with the April Term 1885 both inclusive, amounting to two thousand two hundred and sixty 25-100 dollars.

The defence is that for summoning jurymen in civil causes the sheriff must look to the parties thereto, and for like service in criminal matters the Constitution has prescribed a maximum compensation regulated by the number of Representatives a parish has in the lower house of the legislature, viz five hundred dollars for each Representative. The parish of Caddo has two Representatives and it is admitted that the police jury thereof have regularly paid the plaintiff one thousand dollars annually during the time for which fees are now charged.

The verbiage of the Constitution is as follows;——Sheriffs shall receive compensation from the parish for their services in criminal matters (the keeping of prisoners, conveying convicts to the penitentiary, insane persons to the insane asylum, and service of process from another parish and service of process or the performance of any duty beyond the limits of his own parish excepted) not to exceed five hundred dollars per annum for each Representative the parish may have in the House of Representatives. Art. 119.

The contention is that summoning jurymen is not a criminal matter and therefore the fees for it are not included in this provision of the Constitution. To support this construction reference is made to the definition of matter in law by lexicographers and text-books as "a subject of complaint, a suit, a demand," and to legislative expressions in our own Acts wherein "criminal cases," "criminal proceedings," and "matters of a criminal nature" are said to be used as synonymous, and the conclusion is deduced that "criminal matters" must mean a criminal case or proceeding pending in some court.

A sound and philosophical rule of construction of all law, organic as well as statutory, is to ascertain the mischief sought to be remedied and so to use the appliances the law has provided for its extirpation, that is to construe the law so as to make it effect the purpose for

which it was enacted. Another equally sound rule of construction is that expressions are not to be taken in a technical sense but rather as commonly used, the object being to ascertain what was the intent of the law-maker rather than to confine his meaning to the import of the words as they would be used by a scholar or a philologian.

Discussing this last point first, it is apparent that the Constitution has not used the words "criminal matters" in a technical sense nor even in a strictly correct sense, for it manifestly treats "conveying insane prisoners to the insane asylum" and "service of process from another parish" as criminal matters. Conveying insane persons to an asylum is in no sense a criminal matter, and civil process from another parish has sometimes to be served. Yet they are treated as criminal matters, for what would be the sense of a provision of compensation for sheriff's services in criminal matters at a fixed rate excepting certain specified acts, if those acts are not included in the criminal matters. If those acts are to be paid for and they are not criminal matters, how can they be affected by a provision concerning criminal matters. When the Constitution says sheriffs may receive a certain compensation for their services in criminal matters except carrying lunatics to an asylum etc. it implies that but for that exception the sheriff could not be paid for that service because it is a criminal matter in the intendment of the Constitution, and if conveying lunatics to an asylum is classed among criminal matters by the Constitution, how much more is service of the venire for trying criminal cases to be thus classed.

Reverting to the other and broader rule of construction, what was the mischief to be remedied when the Constitution was making.

The public burdens had increased to an alarming extent in consequence of increased public expenditures. Taxation to meet them had been imposed, and this had become more and more onerous as prosperity waned and individual revenues diminished. The seductive cry for cheap government found an echo in every corner of the State, and when the Convention to frame a Constitution met in 1879 the uppermost thought was how to diminish the public burdens and satisfy the demand for economical government.

Among the matters of increased expenditures there was not one that had attained the appalling proportions of the criminal expenses of the State. Over a third of a million of dollars was absorbed by them every year. This enormous sum was wrung annually from the pockets of the people to pay what in police-jury budgets is called criminal

expenses. In some parishes ten thousand dollars per annum was required. An average of four thousand dollars for each country-parish and one hundred and twenty five thousand dollars for the City made up a heavy exaction the payment of which had to be repeated every year. These are matters of contemporaneous history and served to shew what was the mischief in that particular branch of the public service that imperatively required remedy.

The Convention applied the knife to the sore. Without concerning itself with the particular verbiage to be employed its impulse was to get rid of these annual drafts upon the people in criminal matters, and it did not care what the matter was for which these annual charges had been made, so it appertained to criminal expenses, the intention was to wipe them out and substitute a fixed annual allowance, not to be exceeded. In accomplishing this it never occurred to any member that the term "criminal matters" might not fit a definition in a law-dictionary, or that philological criticism might discover it to be less comprehensive than was intended, and so the beneficent endeavor of the Convention to give relief to the people would be thwarted. They used an expression that conveyed their meaning, viz whatever appertains to sheriffs' services in criminal matters of every kind are included, and some services are meant that are not strictly included in that designation and so we will except these by name.

And this interpretation has been apparently accepted and acted on. Nearly six years have passed since the Constitution went into operation and this is the first suit wherein a claim beyond the fixed compensation has been before us. It was said at bar bv one counsel that several parishes had paid the extra charges without demur and by another that no parish had ever paid them. The practice of the parishes would have no weight with us in making a constitutional construction.

Every thing that serves to the ascertainment of the intent of the law-maker is worthy of consideration. The withdrawal of the annual sums given the sheriff and others for criminal matters was doubtless feared would reduce the revenues of their offices too much, for the clerks also can receive no compensation for their services in criminal matters. Art. 121. The offices of sheriff and tax-collector had been dissevered, and those of clerk and recorder had long been separate. The Convention united them and paved the way for cutting down criminal expenses.

We do not assent to the view of the defendant's counsel that the jury-fee required to be prepaid in civil causes is intended to pay the sheriff for summoning jurymen. It is intended to pay the jury, and if

there were any practicable method of separating the venire for civil causes from that for criminal, the fees for serving the venire in the former would not fall under the rule of this cause.

And after all there is no hardship in cutting down the compensation of the sheriffs and clerks in these matters. In the beginning of our legislation a⸱ American States he who should have proposed to pay court officers out of the State or local treasury for services rendered in criminal matters would have been laughed at for his pains. The State is sovereign and pays no costs. In her prosecutions of criminals she acts as custodian of the public safety. If the alleged criminal is condemned he pays all costs. If acquitted none are paid. No hardship was done for whoever accepted any office under these well understood conditions took it *cum onere*. Modern legislation professed to find an injustice in this and enacted that the State should pay costs in criminal matters and after a while she shifted the burden upon the parishes. The Constitution left the burden there but diminished its weight.

The judgment of the lower court was for the plaintiff after deducting $732.90 from his demand. It is error.

It is therefore ordered and decreed that the judgment of the lower court is avoided and reversed, and that there be now judgment in favour of the defendant rejecting the plaintiff's demand and against him for costs in both courts.