JOHN E. ARNOLD *et al.*, Appellants, v. CITY OF COUNCIL BLUFFS *et al.*, Appellees.

Cities and Towns: POWERS: PARKS: CONDEMNATION PROCEEDINGS.
Under the provisions of chapter 80, of Laws of 1870, and chapter 102 of Acts of the Sixth General Assembly, cities and towns acting under special charters have power to condemn lands for use as public parks by such proceedings as are provided in chapter 31 of Laws of the Fourth General Assembly for the condemnation of private property for railway purposes.    The above provisions are not repealed by chapter 10 of title 4 of the Code.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

SATURDAY, MAY 21, 1892.

ACTION to recover possession of certain lots described.    The case was submitted to the court upon an agreed statement of facts, and judgment entered for defendants.    The plaintiffs appeal.—*Affirmed.*

*Sims & Saunders*, for appellants.

*G. A. Holmes, H. H. Trimble, J. J. Stewart, Burke & Hewitt*, and *Sapp & Pusey*, for appellees.

GIVEN, J.—The facts material to be noticed, as shown by the agreed statement, are these: In 1879, the plaintiffs, then and ever since non-residents of the state, were owners of the lots described, and are still the owners thereof, unless divested of title by the following proceeding: In September, 1879, the defendant city existed under special charter approved January 24, 1853 (chapter 64 of Acts of the Fourth General Assembly). In September, 1879, the defendant city instituted and prosecuted to final judgment a proceeding to condemn the lots described, together with other lands, for use as a public park. Notice was given to the plaintiffs by publication, and the proceeding was had in all respects in conformity with the sections of the Code providing for the condemnation of private property for railway purposes. An award having been made by the sheriff's jury, the defendant city deposited the amount thereof with the sheriff in September, 1879, and immediately took and has ever since held possession of said lots, and has expended large sums of money thereon in improving and beautifying the same as a public park. The plaintiffs did not learn of this proceeding until some time thereafter, and did not know of the improvements being made until about the time of the commencement of this action. The plaintiffs never attempted by appeal or otherwise to question the title of the city until about the time of the commencement of this action, August 17, 1888. They have never received or accepted the award.

The sole contention is whether, under the laws in force in September, 1879, the defendant city had a right to condemn these lots for use as a public park by proceeding as provided for the condemnation of private property for railway purposes. The appellants' contention is that said proceeding is illegal and void, because not prosecuted under and as required by sec-

tions 470 and 476 of the Code of 1873; and the appellees contend that, as the defendant city then existed under special charter, it was authorized to condemn the lots in the manner that it did by virtue of certain other statutes.

The first expressed authority conferred upon cities and incorporated towns to acquire land for use as a public park is found in chapter 127 of Laws of 1864, by which they are authorized to purchase land for that and other purposes named. By chapter 80 of Laws of 1870, it was provided as follows:

"Section 1. Be it enacted by the General Assembly of the state of Iowa that, in addition to the powers conferred upon cities by chapter 127 of the Laws of the Tenth General Assembly, it is hereby provided that, whenever it shall be deemed necessary by any city to enter upon, take, appropriate, and hold any lands within or without the territorial limits of such city, for the use of public squares, parks, commons, cemeteries, hospital grounds, or any other proper and legitimate municipal use, then such city may proceed to ascertain the damages to the owners of such lands by reason of the appropriation thereof, as aforesaid, as is now provided by law for the opening of streets, by proceeding to condemn private property, and, upon the payment of the damages assessed, the fee-simple title to any lands so condemned shall vest in the city, provided the same right of appeal shall be preserved to the owners as in proceedings to appropriate land for opening streets."

In chapter 102 of Acts of the Sixth General Assembly, being "An act to amend the charter of the city of Council Bluffs," is the following provision: "When the property of individuals is taken for the laying out, changing, or widening of streets, as heretofore provided by this act, the city shall pay such damages as may be assessed by a jury or commission organ-

ized in the same manner as is now provided by the law granting to railroad companies the right of way, approved January 18, 1853." By said act approved January 18, 1853 (chapter 31 of Laws of the Fourth General Assembly), damages for right of way taken by railroad companies were assessed by a sheriff's jury selected upon the application of either party.

It will be seen that by said chapter 80 the defendant city was vested with power to condemn lands for use as a public park, and that damages were to be assessed as provided for taking private property for opening streets; that by said section 19, when the defendant city took private property for laying out, changing, or widening streets, the damages were to be assessed as provided by said act approved January 18, 1853, which was by sheriff's jury in the manner pursued in this instance by the defendant city. If there were no other statutes upon the subject of such condemnations, the legality of the proceeding under notice would hardly be questioned.

This brings us to inquire whether the statutes we have referred to were repealed by the Code of 1873. Section 470 of the Code confers powers upon cities and incorporated towns to purchase or condemn lands for use as public parks, and for other purposes named, and section 476 provides that such condemnation shall be upon application to the circuit court. Section 479 contains this provision: "The provisions and powers conferred in this chapter from section 465 to section 479, inclusive, shall apply to cities acting under special charters." If nothing further appeared, it would be entirely clear that, under this provision of section 479, all cities and incorporated towns must condemn land as provided in section 476. The concluding section of chapter 10, title 4 of the Code, which contains said sections 470, 476, 479, is as follows:

"All acts and parts of acts passed subsequent to the fourth day of July, A. D. 1858, and prior to the taking.effect of this Code, relating to cities of the first and second class and incorporated towns, or to any or either of said classes of municipal corporations, and applicable both to such corporations as are acting under special charter, and to such as are incorporated under the general act of which this chapter is an amendment, are repealed by the Code only so far as they affect the latter, and not as they affect corporations acting under special charters. All rights, powers, privileges, duties, directions, and provisions whatever, contained in and enacted by such acts and parts of acts, shall remain in full force and effect, so far as municipal corporations acting under special charters are concerned, and the provisions of this chapter shall not apply to any city or town incorporated prior to the eighteenth day of July, A. D. 1858, unless the same be adopted as hereinbefore provided."

This section expressly reserves from its operation acts "as they affect corporations acting under special charters," and continues them in force and effect so far as such corporations are concerned. The case of the *City of Burlington v. Leebrick*, 43 Iowa, 252, was a proceeding brought by that city, acting under a special charter, in the circuit court, to annex contiguous territory, as provided in section 431 of said chapter 10, which section contains this provision: "The powers conferred under the provisions of this section shall also apply to cities acting under special charters." The question presented was whether this statute applied to the city of Burlington, it being organized under a special charter. It was held that the general must yield to the particular, and that under the particular provision of section 431 the laws applied, and the city might proceed under that section to have the territory annexed. It does not follow from this conclusion that the former laws to which we

have referred are repealed by chapter 10 of the Code. The provisions making certain sections of chapter 10 applicable to cities acting under special charters cannot be said to repeal laws that are expressly continued in full force and effect by section 551. The provision in section 551, that the chapter shall not apply to any city or town incorporated prior to the eighteenth day of July 1858, unless the same be adopted by such city or town as provided, has reference to the general provisions of the statute, and not to those that are expressly made applicable, as in section 431 and section 479. Those sections, expressly made applicable to cities under special charters, are in the nature of amendments to their charters, and hence apply to them, though other parts of the chapter do not, unless adopted by them. By thus holding we give effect to all these statutes, while to hold otherwise would deny full effect to the provisions making certain sections applicable to cities under special charters, or to the plainly expressed reservations and provisions of section 551 as to such cities. While we are of the opinion that said sections 470 and 476 applied to the defendant city by virtue of section 479, and that it might have proceeded thereunder, we are also of the opinion that section 551 preserved in full force the prior laws to which we have referred, and that the city had a right to proceed thereunder as it did. Ordinarily the law does not provide different proceedings for attaining the same end, but where the law providing a proceeding expressly preserves prior laws providing a different mode of proceeding in full force, there is no ground upon which to imply a repeal.

As it follows from these conclusions that the judgment of the district court must be affirmed, we need not notice the curative act, chapter 143 of Laws of 1888. Affirmed.