## HUSTON v. SCOTT *et al.*

No. 1797, Okla. T.    Opinion filed February 3, 1908.

(94 Pac. 512.)

1. **CHAMPERTY AND MAINTENANCE—Offenses—Statutes—Implied Repeal—Transfer of Land.** Section 2026, St. Okla. 1893, making a misdemeanor the buying or selling of any pretended right or title to lands where the grantor or those by whom he claims have not been in possession or taken the rents and profits thereof for the space of one year before such conveyance is not repealed by sections 1, 17, or 46, of the Act of 1897, pp. 92, 95, 102, c. 8, entitled "Real Estates Conveyances, Mortgages and Contracts;" it not being repugnant thereto, by reason of not coming within the scope, purpose, or purview of the latter act.

2. **SAME—Grants of Land Held Adversely—Effect.** A conveyance of land made in contravention of the provisions of section 2026, St. Okla. 1893, by the rightful owner is utterly void as against the person holding adversely claiming to be the owner thereof under color of title, but as between the parties and all the rest of the world it is good, and passes the grantor's title.
   (Syllabus by the Court.)

*Error from District Court, Logan County; before John H. Burford, Judge.*

Ejectment by A. H. Huston against Ann E. Webb. Judgment for defendant, and plaintiff brings error. Pending appeal, Ann E. Reavis, formerly Ann E. Webb, died. The cause was revived in the name of Harry Omar Scott, as administrator with the will annexed. Affirmed.

This suit is one in ejectment filed September 13, 1902 in the district court of Logan county, by A. H. Huston, plaintiff in error, against Ann E. Webb, defendant. The case was tried in the district court December 11, 1903, and judgment against plaintiff rendered therein on the 6th day of April, 1905. From this judgment.

plaintiff appealed to the Supreme Court of the Territory, and while the case was pending in that court, on the 4th day of June, 1907, a motion was presented, suggesting the death of Ann E. Webb, and showing that she died testate on the 9th day of January, 1907, and that at the time of her death was known by the name of "Ann E. Reavis," and further showing that on the 13th day of March, 1907, letters of administration with the will annexed were issued out of the probate court of Logan county, to Harry Omar Scott, and the said cause was revived in this court in the name of said administrator and in the name of the devisees and heirs at law of said defendant in error, who appear here as the present defendants in error.

The facts out of which this controversy has grown are stated in the brief of plaintiff in error, in reference to which statement defendant in error makes no contention, and are, substantially, as follows:

On the 4th day of February, 1892, there was recorded in the office of the register of deeds of Logan county a patent of the United States to John Foster, William S. Robertson, and Andrew C. Schnell, as trustees of the townsite board No. 6, for the W. $\frac{1}{2}$ sec. 9, twp. 16 N., of R. 2, West of Indian Meridian, which tract of land embraced lots 9 and 10 in block 72 in that division of Guthrie, known as "East Guthrie," in Logan county, Okla., and are the lots over which the controversy in this suit arose. On the same day that the patent was recorded there was issued by the said board of trustees to Lib Blubaugh, a deed to said lots 9 and 10, block 72 in East Guthrie, which was recorded in the office of the register of deeds of Logan county, on September 2, 1902. August 25, 1893, Lib Blubaugh and Frank Blubaugh, her husband, made their deed conveying the said lots to B. F. Blubaugh which was recorded December 12, 1894. September 11, 1902, there was executed and delivered by B. F. Blubaugh and Mary A. Blubaugh, his wife, a quitclaim deed to the lots in controversy to A. H. Huston, which deed was recorded in the office of the register of deeds

of Logan county, on September 13, 1902. The foregoing states the chain of title by which the plaintiff in error, paintiff below, claims title to the said lots.

The claim of defendant to the lots rests upon a tax deed which was offered in evidence. The plaintiff objected to the introduction of this deed, taking the position that the same was void, and in view of the fact that it is not contended that it was or is valid, the grounds of the objection need not be stated. This deed was issued to James B. Beadles October 16, 1895. On March 13, 1897, Beadles and his wife made, executed, and delivered a quitclaim deed to the property to Ann E. Webb, the original defendant in error herein. The proof shows that she went into possession of the lots in 1897, and that she still retained such possession at the time of the deed to plaintiff.

The foregoing states the salient facts of the controversy, the plaintiff basing his claim for title and possession of the lots upon the quitclaim deed secured by him September 11, 1902; the defendant claiming that he is not entitled to recover by reason of the provisions of section 2026, St. Okla. 1893.

*Lawrence & Huston,* for plaintiff in error.
*Dale & Bierer,* for defendants in error.

DUNN, J. (after stating the facts as above). Under the issues raised by the facts in this case, there are but two questions which present themselves to the court for determination:

First. Was section 2026 of the Statutes of 1893 in force on September 11, 1902, at the time of the purchase by the plaintiff of his deed from B. F. Blubaugh? the statute reading as follows:

"Every person who buys or sells, or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of one year before such grant, conveyance, sale, promise or covenant made, is guilty of a

misdemeanor"—or was the same repealed by sections 1, 17, and 46 of chapter 8, pp. 92, 95, 102, of the Laws of 1897, entitled "Real Estate Conveyances, Mortgages and Contracts," found in the session laws of that year at page 92? and which sections are as follows:

"Section 1. All male persons of the age of twenty-one years, and all females of the age of eighteen years, and all persons who have been legally married of whatever age, and all corporations to the extent authorized by law, may take title to, hold, mortgage, convey or make any contract relating to real estate or any interest therein."

"Sec. 17. A quit-claim deed, made in substantial compliance with the provisions of this act, shall convey all the right, title and interest of the maker thereof in and to the premises therein described."

"Sec. 46. Article one, of chapter twenty-one, entitled 'Conveyances,' and chapter eighty-two entitled 'Transfers,' of the Statutes of 1893, and all other acts and parts of acts in conflict herewith, are hereby repealed."

If the criminal section above cited was repealed by the act referred to, then there is no question but the title secured by plaintiff in error is a valid one and must prevail.

Second. If the statute was not repealed, what effect does it have upon plaintiff's deed?

We shall treat these propositions in the order in which they are laid down.

The criminal statute referred to, section 2026 of the Statutes of 1893, was enacted by the First Legislature of the territory in 1890, and appears in the statutes of that year as section 2036, and has since been a valid existing law of the territory, unless repealed by the act of 1897, above referred to. The Legislature of 1890 passed two acts covering the law of conveyance in the territory; one entitled "Conveyances," found at page 380 (§§ 1695-1730), and the other "Transfers," found at page 1178 (§§ 6647-6778), of the Statutes of that year. A most casual examination will show that they are inconsistent in a great many of their requirements, but, being passed by the same Legislature and on the same day,

stood together as the law of this territory, neither repealing the other, until 1893, when they were carried into the laws of 1893, with the exception that two articles were omitted from the act on "Transfers." The codification of 1893 remedied the difficulties but little, and doubtless for this reason the Legislature of 1897 passed the act above referred to, which took the place of both of those statutes. It specifically repealed them, and added to this specific repeal, in section 46, "and all other acts and parts of acts in conflict herewith, are hereby repealed." Plaintiff in error's contention is that by reason of the repealing clause above mentioned, and by reason of the fact that he comes under the provisions of section 1, that he was authorized to take title to this land by virtue of being a male person of the age of 21 years, as such a one without exception under this section "may take title to, hold, mortgage, convey, and make any contract relating to real estate or any interest therein," and that his grantors, B. F. Blubaugh and wife, were authorized by section 17 to make a quit-claim deed conveying all their right, title, and interest in and to the premises, by reason of the fact that the criminal act referred to was in conflict with these general unequivocal provisions of the conveyancing act, and hence repealed thereby.

This brings us to the gist of the controversy, and there arises the question whether or not an act of civil character, dealing entirely with civil matters, and passed, as it shows on its face, solely for the purpose of taking the place of two conflicting statutes, dealing with the conveyancing of lands, would be held to be in conflict with an act of a criminal character, which made criminal the dealing in pretended titles to land. It is contended on the part of plaintiff in error that the repeal of this statute in question is within the purview, scope, and purpose, of the civil act, and that its provisions are in direct conflict with the criminal; with equal insistence, defendants in error claim the contrary to be the fact.

There is probably no branch of law more prolific in rule and precedent than the one on statutory construction, and aside from

the specific cases decided by the appellate courts it is to these rules we must first turn when a mooted question of this character is presented. The earliest rule with which we are acquainted for the construction of statutes is found in *Heydon's Case,* 3 Coke, 8, which is as follows:

"That for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law), four things are to be discerned and considered: (1) What was the common law before (the making of) the act? (2) What was the mischief and defect for which the common law did not provide? (3) What remedy the parliament hath resolved and appointed to cure the disease of the commonwealth? (4) The true reason and remedy. And then the office of all the judges is always to make such construction as shall repress the mischief and advance the remedy."

When we weigh the statute under consideration, in this case, by the rules laid down, we find that the mischief and defect existed in two conflicting statutes upon the same subject, and the remedy which the Legislature resolved and appointed to cure the disease due to these conflicting statutes was a harmonious act covering the entire field, and providing specifically for the repeal of the same; that herein rests the true reason and the remedy. Mr. Bishop, in his work on Written Laws to the same point under paragraph 82, says:

"The interpreter should consider and take into the account what was the law before, which Coke says is 'the very lock and key to set open the windows of the statute'; the mischief against which the law did not provide; the nature of the remedy proposed, and the true reason of the remedy. It has been said that we may learn the mischief 'from our knowledge of the state of the law at the time, and of the practical grievance generally complained of.' "

In the case at bar, were not the "practical grievances generally complained of," a lack of harmony in the method prescribed for the transfer of property, and not the fact of any change in the condition and wants of the people of the territory which required a repeal of the criminal statute, which was the common law in

many of the states of the Union since the founding of our government, and which had held its place on our statute since the organization? In the case of *John Lake, Sheriff v. Parish of Caddo,* 37 La. Ann. 788, the court say:

"A sound and philosophical rule of construction of all law, organic as well as statutory, is to ascertain the mischief sought to be remedied, and so to use the appliances the law has provided for its extirpation—that is, to construe the law so as to make it effect the purpose for which it was enacted."

Plaintiff in error contends that the civil act is not only in conflict with the criminal act, but was pronounced and made effective to repeal it by the abrogating language in section 46, "and all other acts and parts of acts in conflict herewith are hereby repealed." It is a universal rule of construction that a subsequent statute dealing with the same subject-matter and enacted for the same purpose—that of displacing a prior one—effects that purpose whenever the provisions are in conflict with each other, and this even where the statute proposed to be repealed is not specifically named in the repealing clause. This being the result of the conflict, what force then is there in the language last quoted? In fact, does it do more than the statute itself would do without it? In the case of *City of Wichita v. Missouri & Kansas Telephone Company et al.,* 70 Kan. 441, 78 Pac. 886, the court says:

"A general repealing clause in an act is a legislative expression which carries with it a repealing effect only where by law the effect would be the same without such repealing clause. *Keirsey v. Labette Co.,* 30 Kan. 576, 2 Pac 864; *Hornaday v. State,* 63 Kan. 499, 65 Pac. 656; *Turner v. State.* 111 Tenn. 593, 69 S. W. 774. In *Turner v. State, supra,* it was said: 'The last section of the act contains a general clause repealing all laws in conflict with this act. But the repealing clause found in the last section of this act has no legal effect whatever. The act is precisely the same in legal import and in point of validity as it would have been without that clause, whose presence makes the act neither more nor less a repealing law.'"

In the case of *District of Columbia v. Sisters of Visitation,* 15 App. D. C. 308, the following language appears:

"The insertion of a general clause repealing no act in particular, but applying only to such laws as may be inconsistent, merely declares an intention that would otherwise be implied to the same extent and with the same effect."

The question now arises, does the act mentioned effect a repeal by implication? To guide us in the answer, resort must be had to the rules recognized and adopted by courts and text-writers applicable to the subject, for they constitute the law of the subject, and are conclusively held to have been in the minds of the legislators when they acted. Does the rule obtain that repeals by implication are favored, and that courts will be astute to so construe a later act that it will be held to displace all acts approaching a similar character, whether within the scope and purpose of the law or not—or is it the rule to the contrary, and that repeals by implication are not favored, but viewed by the courts with distrust and yielded to, when at all, with reluctance? The question has been dealt with times without number, but we will cite a few instances only to exemplify the vigor with which courts resent the destruction of one statute by another which has no force to support it except mere implication.

The court in the case of *Diver v. Keokuk Savings Bank,* 126 Iowa, 691, 102 N. W. 542, 544, says:

"There was no express repeal of any section of the Code, and, if there be a repeal, it must be held to result from implication. Such repeals are not favored in law; and when two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable, no purpose of repeal being clearly expressed or indicated, it is the duty of a court, if possible, to give effect to both. It will not be presumed that the Legislature intended a repeal of a prior statute by a later one on the same subject, unless the last statute is so broad in its terms, and so clear and explicit in its words, as to show that it was intended to cover the whole subject, and, therefore, to displace the prior statute. *Casey v. Harned,* 5 Iowa, 1; *Sherman v. Des Moines,* 100 Iowa, 88, 69 N. W. 410; *Cole v. Supervisors,* 11 Iowa, 552; *State v. Shaw,* 28 Iowa, 67; *Lambe v. McCormick,* 116 Iowa, 169, 89 N. W. 241; *Phillips v. City,* 63

Iowa 578, 19 N. W. 672; *Arnold v. City*, 85 Iowa, 441, 52 N. W. 347."

In the case of *York Gazette Company v. York County*, 25 Pa. Super. Ct. 517, the following language appears in the syllabus:

"To effect a repeal of one statute by another by implication there must be a general and positive repugnance between the provisions of the new law and the old so that they cannot stand together or be consistently reconciled. Such a repeal is never to be favored, and will not be allowed unless it is manifest that the Legislature so intended, as laws are presumed to be passed with deliberation, and with full knowledge of all existing laws on the subject. It is but reasonable to conclude that in passing a statute it was not intended to interfere with, or abrogate any former law relating to the same matter unless the later is repugnant to the earlier one, or unless the reason for the earlier act is beyond peradventure removed."

Mr. Endlich in his work on the Interpretation of Statutes, § 210, says:

"But repeal by implication is not favored. It is a reasonable presumption that the Legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. Hence it is, a rule founded in reason as well as in abundant authority, that in order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict, or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving, at the same time, the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject."

In the syllabus of the case of *Carpenter v. Russell*, 13 Okla. 277, 73 Pac. 930, appears the following language:

"Repeals by implication are not favored, and when two statutes covering in whole or in part the same matter are not absolutely irreconcilable, effect should be given, if possible, to both."

In the discussion of this case, Chief Justice Burford says:

"It is also a well-settled rule of construing statutory provisions that 'repeals by implication are not favored, and when two statutes covering in whole or in part the same matter are not absolutely irreconcilable, effect should be given, if possible, to both of them.' (*U. S. v. Greathouse,* 166 U. S. 601, 17 Sup. Ct. 701, 41 L. Ed. 1130). 'It must appear that the latter provision is certainly and clearly in hostility to the former. If by any reasonable construction the two statutes can stand together, they must so stand. If harmony is impossible and only in that event, the former law is repealed in part or wholly, as the case may be.' (*State v. Stahl,* 17 Wall. (U. S.) 430, 21 L. Ed. 650). 'Repeals of statutes by implication are not favored, and are never admitted where the former can stand with the new act, but only where there is a positive and irreconcilable repugnancy, or the latter is plainly intended as a substitute for the former.' (*Chew Heong v. U. S.,* 112 U. S. 536, 5 Sup. Ct. 255, 28 L. Ed. 770.) 'It is necessary to a repeal by implication that the objects of the two statutes must be the same; if they are not, both will stand, even though they refer to the same subject.' (*U. S. v. Claflin,* 97 U. S. 546, 24 L. Ed. 1082, 1085.) 'It is a general rule, without exception in construing statutes, that effect must be given all their provisions, if such a construction is consistent with the general purpose of the act, and the provisions are not necessarily conflicting. All acts of the Legislature should be so constructed, if practicable, that one section will not defeat or destroy another, but explain and support it.' (*Bernier v. Bernier,* 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152)."

We will thus see that we are forbidden to give the effect contended for to the later act if there is any reasonable escape from it— the presumption obtaining, as stated by Mr. Endlich, that if the Legislature intends to repeal an act it will say so. Lewis' Sutherland Statutory Const. vol. 1, § 247.

In addition to the rule thus laid down, there is another limitation recognized by the authorities, a statement of which is found in Mr. Sutherland's work on Statutory Construction, § 138, which is as follows:

"Such repeals are recognized as intended by the Legislature, and its intention to repeal is ascertained as the legislative intent is ascertained in other respects, when not expressly declared, by construction. An implied repeal results from some enactment, the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act. * * * One statute is not repugnant to another unless they relate to the same subject, and are enacted for the same purpose. When there is a difference in the whole purview of two statutes apparently relating to the same subject, the former is not repealed. Such is the general doctrine, in which all the cases concur."

In 1 Kent, Comm. 462, appears the following:

"It is an established rule in the exposition of statutes that the intention of the lawgiver is to be deducted from a view of the whole and of every part of a statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms."

In the case of *State Mutual Insurance Company v. Clevenger*, 17 Okla. 49, 87 Pac. 583, the following language appears in the syllabus:

"Where the language of an act of the Legislature is dubious, the court, in construing it, will consider the reason and intent of the law, to determine its scope and true meaning."

Endlich, in his work on the Interpretation of the Statutes, § 113, says:

"One of these presumptions is that the Legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication; or, in other words, beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed. It is in the last degree improbable that the Legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law, without expressing its intention with irresistible clearness; and to give any such effect to general words, simply because, in their widest and perhaps natural sense, they have that meaning, would be to give them a meaning in which they were not really used. It is, therefore, an established rule of construction that general words and phrases, however wide and comprehensive in their literal sense, must be con-

strued as strictly limited to the immediate objects of the act, and as not altering the general principles of the law."

The foregoing rules constitute well-understood limitations to the effect of any general law. They are just as much a part of the act as if written into it. They control it and restrict the scope of its action to the utmost limit. No Legislature acts except within the scope they grant, and no court construes the meaning of any statute presented for consideration, except it recognizes their force and potency. If plaintiff in error's contention were consistent, and this section permitted to stand alone, repealing and taking the place of all other laws touching the subject, and its words are to be given the amplified meaning for which he contends, let us see into what mazes and difficulties we would be led: "All male persons of the age of 21 years, etc., may take title to, hold, mortgage, convey, and make any contract relating to real estate or any interest therein." No exceptions are mentioned within the section, and he contends there are none, and that this supplants all the law on the subject.

Section 3612, St. Okla. 1893, provides:

"After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined."

To give the force contended for by plaintiff in error to the section in question would qualify every incompetent 21 years old in the state, even if his incapacity had been judicially determined, and he was under the care of a guardian; even though a gibbering imbecile, incarcerated in a sanitarium, occupying the ward of the incurable, he would be fully competent, under this construction, to convey his real estate, mortgage it, and deal with it, and the courts supine and powerless would witness his exploitation.

In addition to that, section 2578, St. Okla. 1893, provides:

"A person sentenced to imprisonment in the Territorial Prison for life is thereby deemed civilly dead."

The courts hold, under this section, a man in this condition is disqualified from making any deed, mortgage, or other conveyance of his property. Does any one suppose that this section and the preceding one were in the minds of the legislators at the time they passed the conveyancing act in question? And the person upon whom these sections operate, if they be but 21 years of age, permitted to deal to the fullest extent, in their real property? Are they within the scope, purpose, and purview of the act?

Furthermore, courts in suits, often enjoin men from selling their own real property and the interest which they have in it until the settlement of a controversy in reference thereto, but the statute, with the construction contended for, would permit them to ignore the order of any court, and to rely with absolute security upon the proposition that they had an interest in the real estate, were over 21 years of age, and had a right to convey it.

The foregoing exemplifies the absurd results following a literal construction of the statute as contended for by plaintiff in error and we escape therefrom only by virtue of the salutary rules herein invoked. The mere statement of the proposition carries refutation with it.

The law reads into the act the exceptions the foregoing argument suggests. If section 3612 and section 2578 were not repealed, then neither was section 2026, for, as they were not within the scope, purpose, and purview of the act, it was not. If they were not repealed by implication, it was not. They were all equally constructively excepted from its operation, and the act must be read and understood as it was intended—to cure the defects in our conveyancing law, and not to repeal the section making the dealing in pretended titles to land an offense. The authorities in which the principle enunciated above is declared are numerous. We will cite but a few of the great number. *Territory ex rel. Sampson v. Clark,* 2 Okla. 82, 35 Pac. 882; *Nix v. Gilmer,* 5 Okla. 740, 50 Pac. 131; *Emma F. Proctor v. Hann. &*

*St. Joe R. R. Co.,* 64 Mo. 112; *Maxwel' v. Collins,* 8 Ind. 38; *Tioga County v. South Creek Township,* 75 Pa. 433; *Cole v. Board of Supervisors,* 11 Iowa. 552; *Johnson v. Board of Canvassers,* 101 Mich. 187, 59 N. W. 412; *Commonwealth v. Standard Oil Co.,* 101 Pa. 119; *A. T. & S. F. R. Co. v. Haynes et al.,* 8 Okla. 576, 58 Pac. 738; *Stark v. Starr,* 6 Wall (U. S.) 402, 18 L. Ed. 925. Endlich on Interpretation of the Statutes, §§ 113, 114, 115, 122, 209, and cases cited; Lewis' Sutherland Statutory Construction (1904) § 370, and cases cited; Bishop on Statutory Crimes (3d Ed.) §§ 156,160.

The case of *Nix v. Gilmer, supra,* was an action of replevin brought by Mrs. Gilmer against Nix, and on the trial Tucker Gilmer, the husband of plaintiff, was allowed by the court, over objection, to testify in behalf of his wife. This was urged as error, under the claim that he was incompetent to so testify, under subdivison 3, § 335, Civ. Code (St. 1893, § 4213). On the other hand, it was claimed that this portion of said section was repealed by section 29, c. 41, p. 201, of the Session Laws of 1895; said section is in part as follows:

"Provided, however, that neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other, but they may in all cases be witnesses for each other, and shall be subject to cross-examination as other witnesses, and shall in no event on a criminal trial be permitted to disclose communications made by one to the other, except on a trial of an offense committed by one against the other."

Our court said:

"While the provision just quoted seems to be quite general in its application, yet, as it is contained in the chapter on Criminal Procedure, and does not purport to repeal or amend said article 335 of the Civil Code, we hold that it does not necessarily do so by implication, but applies solely to criminal actions."

The chapter in which this section occurred also contains the proviso of the concluding section of the chapter of 1897 on Con-

veyances, "all acts and parts of acts inconsistent herewith are hereby repealed."

We now come to the second proposition, and the question arises, the statute being held operative and in force, what is the effect upon the deed from Blubaugh to Mr. Huston? Is it still effective and in force, and is the only result an infraction of the criminal act? This is the position taken by his counsel in his brief, citing, in support thereof, *Long Bell Lumber Co. v. Martin*, 11 Okla. 192-201, 66 Pac. 328, 331, wherein appears the following:

"It is also contended that the deed from Barnes *et al.* to Martin is in violation of section 2025 of the Statutes of 1893, which provides that: 'Every person who takes any conveyance of lands or tenements, or of any interest or estate therein, from any person not being in the possession thereof, while said lands or tenements are the subject of controversy, by suit in any court knowing the pendency of such suit, and that the grantor was not in possession of said lands or tenements, is guilty of a misdemeanor.' This statute does not undertake to declare that the conveyance of the lands, tenements, or interests shall not be effective, nor is there anything in the statute which would preclude the effect of such conveyance, or that Martin had any knowledge of the pendency of any suit in any court touching the property, nor is there any proof in the case that the lands in question were the subject of any such suit."

The declaration of law made in the quotation was clearly *obiter dictum*:

"Where a judge who writes the opinion of the court expresses a view upon any point or principle which he is not required to decide, his opinion as to such point or principle is *obiter dictum*." *Hart v. Stribling*, 25 Fla. 433, 435, 6 South. 455; *L. Bucki & Son Lumber Co. v. Fidelity & Deposit Co.* (U. S,) 109 Fed. 393. 400, 48 C. C. A. 436; vol. 3, Words & Phrases, p. 2051.

So, when the learned jurist, Justice McAtee, speaking for the court, made the finding of fact "or that Martin had any knowledge of the pendency of any suit in any court touching the property, nor is there any proof in the case that the lands in ques-

tion were the subject of any suit," there was created a condition under which he was not required to decide the legal question involved, and the holding is *obiter dictum,* and not binding on this court.

The propositions involved herein have been dealt with to a greater length, and authority has been cited to a fuller extent, than otherwise would on account of the scholarly brief and argument presented in behalf of plaintiff in error, and while it may be true as counsel argues that the statute has outlived its usefulness, and has come to us more as a historical relic from the days when great men oppressed weak ones, it is within our statute, enacted by our Legislature, and, until that body sees fit to pass an act repealing it, it is the duty of this court and all others to recognize and enforce it. Nor are we unmindful in passing of section 6137 of the Statutes of 1893, and of the force of the argument presented by the repealing of that section, but as we have seen, section 2026, not being within the scope, purpose, or purview of the conveyancing act of 1897. it was not repealed thereby, while the act last mentioned specifically repealed it.

Defendants in error contend that the deed is void under the rule laid down in *Ruemeli v. Cravens,* 13 Okla. 342, 74 Pac. 908. The doctrine of that case, generally speaking, is correct, but does not apply in the case at bar. For the deed in this case is not void as between the grantor and grantee, nor due to any disability of either the former to make the transfer, or the latter to take the title. The disability does not lie there, but is inherent in the condition of the land itself, which being held adversely under color of title, the conveyance thereof is void as against such occupant. It is his right of occupation which is protected. If the grantee can induce such adverse claimant to waive the possession, and yield it to him, his title is absolute, and complete. It is a transfer of land in adverse possession against which the statute animadverts, but the deed made between the

parties is good as between them and to all the world. This is the holding of all of the cases and text-writers who have dealt with the subject.

"Both at common law and under statutes adopting the common law or the statute of Henry VIII (32 Hen. VIII, c. 9), a conveyance of land, though by the rightful owner, while it is in the adverse possession of another claiming to be the owner thereof, is absolutely void as to the party in possession and his privies." (6 Cyc. 883, and cases cited.)

In a New York case, *Livingston v. Proseus,* 2 Hill, 526, the syllabus reads as follows:

"A deed of lands held adversely to the grantor is utterly void as against the person thus holding and others afterwards coming in under him; but, in respect to all the rest of the world, it is operative, and passes the grantor's title."

And in the discussion of the authority which follows, the court says:

"The whole apparent difficulty arises from an inaccurate statement of the consequence which results from the adverse holding at the time the deed is executed. It is often said in the books, without any qualification, that the deed is void. But that is only true in relation to the person holding adversely, and those who afterwards come in under him. As to all the rest of the world the deed is valid, and passes the title from the grantor to the grantee. This, I think, is sufficiently established by the cases already mentioned, and the authorities on which they rest. The deed is void as against the party who might otherwise be injured; but is good as to all others. * * * But as against the person holding adversely, the deed is utterly void—a mere nullity."

*Farnum v. Peterson,* 111 Mass. 148; *Wade v. Lindsey,* 6 Metc. (Mass.) 407; *Cleveland v. Flagg,* 4 Cush. (Mass.) 76; *Mc-Mahan v. Bowe,* 114 Mass. 140, 19 Am. Rep. 321. In addition to the authorities above cited, the following cases support the same doctrine: *John Doe ex dem. Dearmond v. Roe,* 37 Ga. 5; *Den et al. v. Geiger,* 9 N. J. Law, 225; *Steeple et ux. v. Downing et al.,* 60 Ind. 478; *Whitaker v. Cone,* 2 Johns. Cas. (N. Y.) 57; *Pepper v. Haight et al.,* 20 Barb. (N. Y.) 429; *Thompson v. Rich-*

*ards,* 19 Ga. 594; *Everenden et al. v. Beaumont et al.,* 7 Mass. 76; *Brinley v. Whiting,* 5 Pick. (Mass.) 347; *Swett et al. v. Poor et al.,* 11 Mass. 549; also Sutherland on Statutory Const. § 336.

It being found, therefore, that Ann E. Webb, the original defendant in this case, being in adverse possession under claim of right and color of title on September 11, 1902, at the time of the making of the deed by Blubaugh to plaintiff in error, the same is as to her successors in interest invalid.

The judgment of the lower court is accordingly affirmed.

Williams, C. J., and Hayes and Turner, JJ., concur; Kane, J., dissents.