### CHARLEY LONGMIRE v. THE STATE.

#### No. 3353.   Decided December 16, 1914.

1.—Unlawful Delivery of Intoxicating Liquors—Allison Law—Case Stated.

Where, upon trial of unlawfully transporting, carrying and delivering intoxicating liquors from non-local option territory to a person residing within local option territory under the so-called Allison Act, the evidence showed that the defendant purchased intoxicating liquors in non-local option territory and delivered the same to a person residing in local option territory upon request of said person for the latter's personal use, he was guilty of no violation of the said Allison Law, under section 4 of said Act. Prendergast, Presiding Judge, dissenting.

2.—Same—Requested Charge—Theory of Defense.

Where defendant contended that he purchased intoxicating liquor in non-local option territory for his personal use and personally carried the same to local option territory, and that the prosecuting witness there, without the knowledge of the defendant, got a part of said liquor, and the court submitted this theory of the defense, there was no error in refusing special charges relating to the same matter.

3.—Same—Law in Force—Contest—Local Option.

Where no contest was instituted within the time provided by law in a direct proceeding, the question as to the validity of the local option law and the same being in force in the county of the prosecution could not be raised on the trial of the case where the accused was charged with a violation of the local option law, and there was no error in refusing a charge on this issue. Following Doyle v. State, 59 Texas Crim. Rep., 60, and other cases.

4.—Same—Indictment—Local Option Law—Allison Act.

The contention that as the local option law was adopted in the county of the prosecution prior to the enactment of the Allison Law, and that, therefore, its provisions could not apply to the said county, is untenable, and has been declared adversely to defendant. Following Fitch v. State, 58 Texas Crim. Rep., 366.

5.—Same—Indictment—Interstate Commerce—Intrastate Commerce.

Where the indictment was drawn under the sections of the Allison Law relating to intrastate transactions, the allegations in the indictment are sufficient to charge an offense, and it was not necessary to negative the exceptions con-

tained in other sections of the law or that said transportation of intoxicating liquor was not an interstate transaction, as this was the defensive matter.

**6.—Same—Legislative Authority—Police Power—Intrastate Transactions.**

With reference to the shipment and delivery of intoxicating liquors wholly within this State, the Legislature of the State of Texas alone has authority to deal, and in so far as it may be necessary to protect the public health, public morals and public welfare, their will as expressed into law is final and supreme.

**7.—Same—Police Power—Constitutional Law—Inherent Power.**

The police power includes the right to regulate, control and prohibit occupations which endanger the health, morals and safety of the general public. The police power is inherent in government and may be exercised by every sovereign State through its law-making agency, independent of any specific or general grant of constitutional express authority, and such power is not abrogated by the local option law (constitutional provision), but it is the duty of the Legislature to enforce the will of the people.

**8.—Same—Constitutional Law—Local Option—Needful Laws.**

Under section 20, article 16, Constitution of Texas, the Legislature has not only the authority, but it is under obligation to pass all such laws as may be necessary to render that right effective and to pass all needful laws to prevent illegal sales and leaves the choice of method to the Legislature, and there is nothing in that provision which should be construed as denying the power to prevent the sales which are prohibited, by any legitimate remedy appropriate to that end. Overruling Holley v. State, 14 Texas Crim. App., 505. Following Dupree v. State, 102 Texas, 455; Snearly v. State, 52 S. W. Rep., 547, and other cases. Davidson, Judge, dissenting.

**9.—Same—Constitutional Limitation—Inherent Power.**

Instead of section 20, article 16, Constitution of Texas, being an implied limitation on the power of the Legislature to pass all necessary laws to render effective the prohibition law, wherever adopted, if the Legislature had not already possessed the authority by virtue of being the representative of sovereignty, the authority to pass all necessary law, to render effective the prohibition law, wherever adopted, would be necessarily implied by virtue of said provision. Davidson, Judge, dissenting.

**10.—Same—Constitutional Law—Intrastate and Interstate.**

The contention that it is not a violation of law to ship, transport and deliver whisky to one in prohibition territory for personal use from a point without the State, and that, therefore, that under the Allison Law, it can not be held that said law prohibits the transportation and delivery of intoxicating liquors from a point within the State for such use is not tenable, where the transaction was an intrastate one and an alleged violation of section 4 of said Allison Act. Distinguishing Peede v. State. 75 Texas Crim. Rep., 247.

**11.—Same—Interstate and Intrastate Commerce.**

Interstate commerce is under the control of Congress by virtue of the Federal Constitution, but commerce wholly within this State is under the control of the State government, and in dealing with the transportation of liquors wholly within this State, the Legislature did not use the qualifying words "is intended to be received, possessed, sold or in any manner used in violation of the law" as in section 5 of said Allison Act. Harper, Judge.

**12.—Same—Statutes Construed—Local Option Territory.**

The caption of the Allison Act and its provisions as a whole render it clear and certain that it should and does apply only to such territory as may have already or may hereafter adopt the local option law. Harper, Judge.

**13.—Same—Different Laws of Regulation.**

Different regulatory laws are required and permitted in territory licensing the sale of intoxicating liquors from the laws required and permitted to prevent

altogether the sale of intoxicating liquors in prohibition territory, and such legislation is not unconstitutional. Harper, Judge.

**14.—Same—Construction of Allison Act—Individual Views.**

The language of the so-called Allison Act is subject to the construction that it prohibits the shipment, transportation and delivery of one's own liquor to him in prohibition territory, and is, therefore, unconstitutional and void. Section 20 of article 16 of the Constitution should be construed as a limitation on the power of the Legislature to pass any law under the police power to affect in anywise intoxicating liquors in prohibition territory other than merely to punish for an illegal sale. Davidson, Judge. (Prendergast, Presiding Judge, and Harper, Judge, dissenting.)

**15.—Same—Construction of Allison Act—Individual Views.**

The proper construction to give to the so-called Allison Law is that it prohibits the transportation, shipment, carriage and delivery of intoxicating liquors in prohibition territory, except for medicinal, scientific and sacramental purposes, and that the Legislature has the authority and power to regulate and prohibit the transportation, shipment and delivery of intoxicating liquors for one's own use in prohibition territory, even though said law in section 9 authorizes one to purchase it for his own use and carry it to his home in prohibition territory. Prendergast, Presiding Judge. (Harper, Judge, and Davidson, Judge, dissenting.)

**16.—Same—Construction of Allison Law—Police Power.**

When the Legislature goes beyond the proper bounds of its police power and seeks to control the individual citizen in the mode of transportation or carriage of his property to his home (whether in prohibition territory, and whether it is whisky or other property) that he has legally acquired at points where the State has licensed and authorized its sale, when the property is not of the nature that the mere mode and method of its shipment, transportation and carriage can be injurious to the public health, morals, safety or public good, it has gone beyond the limits heretofore recognized as inherent in the State under the police power. Prendergast, Presiding Judge, dissenting.

**17.—Same—Statutes Construed—Legislative Power.**

When the Legislature has declared the policy of the State and has given to each citizen thereof the right to acquire intoxicating liquors and convey to his home, the courts have no authority to seek to nullify that right by erecting and placing insuperable barriers to the exercise of that right, and if it is deemed desirable to prohibit the individual citizen from obtaining and having in his possession for his own use intoxicating liquors, the remedy is with the people, and not with the courts. Prendergast, Presiding Judge, dissenting.

**18.—Same—Statutes Construed—Allison Law—Individual View.**

The proper construction of the Allison Act shows that it was the intention of the Legislature to prohibit the shipment, transportation, carriage (personal or otherwise) and delivery of intoxicating liquors into prohibition territory for any purpose other than for medicinal, scientific and sacramental purposes, and the personal use (and members of his family) of the persons receiving same, and the law as thus construed is valid and violative of no provision of the Constitution. Harper, Judge.

**19.—Same—Allison Law Construed—Different and Separate Offenses.**

If one carries whisky into prohibition territory for sale and sells it, he can be prosecuted under the Allison Law, both for carrying or transporting the whisky into prohibition territory for sale and also for making a sale, if he sells it. Harper, Judge.

**20.—Same—Statutes Construed—Allison Act—Police Power.**

The transportation of intoxicants to the citizen for his own use can not interfere in letter or spirit with the local option law, as it is neither a sale nor

intended sale. The citizen certainly can do by his agent the thing he himself can do innocently. Police power is not arbitrary, but within constitutional limits. Davidson, Judge. Prendergast, Presiding Judge, dissenting.

**21.—Same—Personal Use—Affidavits—Druggists—Labeling.**

There is nothing in the opinion that can be construed as rendering invalid those provisions of the Allison Law requiring affidavits to be made by druggists and others, and a provision to require the owner when he secures intoxicating liquors from the express office to make affidavit that he intended it for his own use would be valid; neither does the labeling of said liquor when shipped render said law invalid. Harper, Judge. Prendergast, Presiding Judge, dissenting, holding that the entire Allison Law has been invalidated by the majority opinion.

**22.—Same—Rules of Construing Statutes—Constitutional Law.**

See opinion for rules of construction of statutes, in passing upon their constitutionality.

Appeal from the District Court of Hamilton. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of unlawfully transporting, carrying and delivering intoxicating liquors into prohibition territory; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Eidson & Eidson,* for appellant.—On question of unconstitutionality of section 4 of Allison Act: Connolly v. Union Sewer Pipe Co., 184 U. S., 540; North Carolina v. Williams, 17 L. R. A. (N. S.), 299; Austin v. Tenn., 179 U. S., 343; Hayes v. Mo., 120 U. S., 68; Mo. v. Lewis, 101 U. S., 22; Barbier v. Connoly, 113 U. S., 27; Yick Wo v. Hopkins, 118 U. S., 356; Duncan v. Mo., 152 U. S., 377; Ex parte Brown, 38 Texas Crim. Rep., 295; Lewis v. State, 58 Texas Crim. Rep., 351, 127 S. W. Rep., 808.

On question that Legislature has authority only to pass laws prohibiting the sale of intoxicating liquor in localities where local option law is in force: Fitch v. State, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040; Lewis v. State, supra.

On question of personal use of liquor: Calhoun v. Ky., 156 S. W. Rep., 1077; Martin v. Com. of Ky., 156 S. W. Rep., 870; Com. v. Campbell, 24 L. R. A. (N. S.), 177; State v. Gilman, 6 L. R. A., 847; State v. Williams, 17 L. R. A. (N. S.), 299.

On question of personal liberty: John Stuart Mill, pp. 22-23, 98, 144-146, 157-158.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was prosecuted under an indictment charging that "on or about the 13th day of August, 1914, that he, a private person, did then and there unlawfully transport, carry and deliver intoxicating liquor to one Roy Blansit in Hamilton County, Texas." Other necessary allegations are made showing that local option was in force in Hamilton County, etc., but as the whole case hangs

around the above allegation we only copy that much of it in substance. When tried he was convicted, and his punishment assessed at one year confinement in the State penitentiary.

The evidence in behalf of the State would show that appellant stated he was going to Waco. Roy Blansit delivered to him one dollar, with an understanding that appellant would bring him, Blansit, a quart of whisky; that appellant did bring the whisky, and placed it where Blansit could and did get it. They were working together at the time, but were not members of the same family.

Appellant's contention is that he having business in Waco, desiring to go there to see his uncle, he remarked that if he had money enough he would go, when Blansit let him have a dollar; that at the time he received the dollar he told Blansit he could not bring him any whisky, and that he did not bring Blansit any whisky. That he bought some whisky for himself, and brought it back home with him, and if Blansit got a quart of it he did not know it. This defense was submitted by the court to the jury, he giving, at appellant's request, the following charge: "If you believe from the evidence that defendant purchased liquor in Waco for his personal use, and personally carried said liquor to Hamilton County, but that after he reached Hamilton County with it, the prosecuting witness, Roy Blansit, without the knowledge of the defendant, got a part of said whisky, or in case you have a reasonable doubt hereof, you will acquit the defendant." Having given this special charge, there was no error in refusing to give the other special charge relating to the same matter.

There was no error in refusing to give the special charge in regard to whether or not local option was in force in Hamilton County. Our law now provides for a contest to be instituted in a given period of time, and if no contest is instituted within this time the question as to the validity of the law can not be later raised on the trial of a case where one is charged with a violation of the law. In the case of Doyle v. State, 59 Texas Crim. Rep., 60, this court held: "Whatever we might conclude in respect to these several matters in the absence of the statute passed by the Thirtieth Legislature (Acts 30th Leg., chap. 8) requiring contests to be made of local option elections theretofore or thereafter to be held, it is sufficient to say, that in the absence of a contest we must and shall assume that the judgment and decree putting local option in force and the proclamation of the county judge had the effect to institute the law in the county, and this presumption and conclusion are conclusive on us and on appellant." (See also Alexander v. State, 53 Texas Crim. Rep., 504; Evans v. State, 55 Texas Crim. Rep., 450; Jerue v. State, 57 Texas Crim. Rep., 213.) The record shows that the order of the county judge prohibiting the sale of intoxicating liquors in Hamilton County was published in the "Rustler," a weekly newspaper, November 30, and December 7, 14 and 21, 1911, and prohibition was and is in force in said county, and no contest having been instituted, we conclusively presume that all steps taken were legal.

Appellant moved to quash the indictment on various grounds, none

of which, we think, are tenable. He contends that as the local option law was adopted in Hamilton County prior to the enactment of the Allison Law by the Legislature, its provisions do not apply to Hamilton County. This was decided adversely to him in the case of Fitch v. State, 58 Texas Crim. Rep., 366.

Appellant also contends that the indictment should have alleged whether the transportation was an interstate or intrastate transaction. This court held in the Peede case that sections 2, 3 and 4 related to intrastate transactions, and section 5 to interstate. As the indictment in this case is drawn under the sections relating to intrastate transactions, the allegations in the indictment are sufficient to charge an offense under these sections of the bill. The Act itself specifically provides in section 12 that "it shall not be necessary to negative the exceptions herein made, but same shall be available as purely defensive matters."

Many other objections are urged to the indictment, all of which go to the constitutionality of the Act. In the brief herein filed, and in the able oral argument presenting this case, the validity of the law is assailed from almost every conceivable viewpoint. This is an intrastate transportation of whisky, and it is urged that as we held in the Peede case that it was not a violation of law to ship, transport and deliver whisky to one in prohibition territory for personal use from a point without the State, that to hold that the law prohibits the transportation and delivery of whisky from a point within the State for such use, would render the law void, for by such construction it would contravene section 1 of article 14 of the Federal Constitution, which guarantees to each individual the equal protection of the law. In the Peede case we were passing on that provision of the law, section 5, which by its terms dealt with interstate shipments, etc., and it by its language provided that such shipments were prohibited only when "intended by any person interested therein to be received, possessed, sold, or in any manner used in violation of any law of this State." This being an intrastate transportation, a transportation from Waco, where the sale is licensed, to Hamilton County, where the sale is prohibited, a different question is presented. In dealing with intrastate shipments the Legislature has provided:

"Sec. 2. Except as otherwise provided in this Act it shall be unlawful for any person, firm or corporation, or any officer, agent or employee thereof in this State to deliver to any other person, firm or corporation, or any agent, officer or employee thereof, any intoxicating liquor for shipment, transportation, carriage or delivery within this State.

"Sec. 3. Except as otherwise provided in this Act, it shall be unlawful for any person, firm or corporation, or any agent, officer or employee thereof in this State to receive from any other person, firm or corporation, or any agent, officer or employee thereof, any intoxicating liquor for shipment, transportation, carriage or delivery within this State.

"Sec. 4. Except as otherwise provided in this Act, it shall be unlawful for any person, firm or corporation, or any agent, officer or employee thereof to ship, transport, carry or deliver any intoxicating liquor to

any other person, firm or corporation, or any agent, officer or employee thereof in this State.

"Sec. 9. Nothing in this Act shall make it unlawful for any person, for the use of himself or the members of his family residing with him, to personally carry such liquor to any point within this State."

In dealing with commerce between the States we must remember this is under the control of Congress by virtue of the interstate commerce clause of the Federal Constitution, and our State can go and only has gone as far as Congress has seen proper to authorize. But just as commerce between the States is under the dominion and control of the Federal government, commerce wholly within the State is under the control of the State government, and if a State in legislating, recognizing this to be true, should, as many States have done, prohibit the traffic in intoxicating liquors within the State, yet a citizen might and often has sent to another State and purchased such liquors, such legislation is not violative of any provision of the Federal Constitution, and does not deprive any citizen of the equal protection of the law, for all citizens of the State have the same right and privilege to send and get it without the State, although not to buy it within the State.

We have quoted above the provisions of the law, so that it may be seen that in dealing with the shipment and transportation of liquors wholly within the State, the Legislature did not use the qualifying words "is intended to be received, possessed, sold or in any manner used in violation of the law," in sections 2, 3 and 4 as they did in the section (5) dealing with interstate shipments, etc. In this case we have wholly a different question presented, for now we are dealing with transportation and shipment wholly within the State, a question which our State legislative body alone has authority to deal, and in so far as it may be necessary to protect the public health, public morals and public welfare their will as expressed into law is final and supreme.

We are aware that in the case of Holley v. State, 14 Texas Crim. App., 505, Judge White held that section 20 of article 16, in authorizing the sale of whisky to be prohibited, was an implied limitation on the power and authority of the Legislature, and the Legislature of this State could do no more than to say "thou shalt not sell," and affix a penalty for making an illegal sale. Judge Willson, however, at that time dissented from the view that this provision of the Constitution was a limitation on the authority of the Legislature, which Judge White admits it would possess in the absence of this provision, to by general law pass such legislation as it deemed advisable. It is to be regretted that this court has never been in entire harmony on this question since the adoption of this provision of the Constitution, but the writer is of the opinion that the great weight of authority holds that where by the organic law of the State the people are given the right to prohibit the sale of intoxicating liquors, the Legislature has not only the authority but it is under obligation to pass all such laws as may be necessary to render that right effective—to pass all needful laws to prevent illegal sales, and this is the view of our Supreme Court, and they are unani-

mously of that opinion. In the case of Dupree v. State, 102 Texas, 455,. that court says: "The proposition that only *sales* may be *prohibited* has sometimes been thought to imply the further one that the prohibition can only be enforced by denouncing and punishing as an offense the· completed sale. This restricts the power granted within too narrow limits, as we had occasion to hold in Ex ·parte Dupree, 101 Texas, 150,. 105 S. W. Rep., 493. The purpose of the prohibition is to prevent the· thing prohibited, and this provision of the Constitution prescribes no scheme of legislation by which that is to be done, but leaves the choice of the methods to the law-making power. There is nothing whatever in the provision which, in our opinion, should be construed as denying the power to prevent the sales which are prohibited by any legitimate remedies appropriate to that end. Prevention of crime is one of the objects to which the most anxious ·thoughts and the most constant efforts of thoughtful legislators are directed, and the dealing with the steps preparatory to commission is a favorite method."

Again, in Ex parte Dupree, 101 Texas, 150, p. 155, Chief Justice Brown, speaking for the court, says: "The Constitution ·does not require the Legislature to submit to a vote of the people the law *which is necessary to enforce prohibition,* and it has not done so; this is a proper· subject for legislative action."

Thus it is seen that our Supreme Court holds that the Legislature has authority to say more than "thou shalt not sell,"—that it has author-· ity and power to enact all necessary legislation to *render effective* the· prohibition law, wherever adopted, and, as Judge Williams said in Dupree v. State, supra: "Prevention of crime is one of the objects to which the most anxious thoughts and the most constant efforts of· thoughtful legislators are directed, and the *dealing with the steps preparatory to commission is a favorite method.*"

We are of the opinion the Legislature not only has authority to punish· a person for selling in violation of the law, but it has the authority to pass on all necessary legislation to prevent illegal sales being made.

Instead of section 20 of article 16 being an implied limitation on the power of the Legislature to pass all necessary laws to render effective the prohibition law wherever adopted, we think if the Legislature had not already possessed the authority by virtue of being the representative of sovereignty, the authority to pass all necessary laws to render effective the prohibition law wherever adopted would be ˉnecessarily implied by virtue of section 20 of article 16. Mr. Cooley in his work on Constitutional Limitations has well said: "The distinguishing characteristic· difference between the Federal and State Constitutions is that the Constitution of the United States is but a grant of legislative power, and the Congress can, in framing laws, only exercise such authority as is· granted, whilst, on the other hand, State Constitutions are ˉonly limitations upon the complete power with which, otherwise, the legislative department of the State was vested in its creation. 'Congress can pass no laws but such as the Constitution authorizes, either expressly or by implication, while the State Legislature has jurisdiction of all subjects

on which its legislation is not prohibited. The law-making power of the State, it is said in one case, recognizes no restraints, and is bound by none, except such as are imposed by the Constitution. That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity, and is, therefore, the paramount law. Its object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations the power to make laws would be absolute.'"

While Congress can pass no law except in those instances where the authority to do so was delegated to it by the Constitution, yet it has always been held by the Supreme Court of the United States, that where the power to pass a given law was expressly delegated, Congress necessarily also impliedly had all necessary authority to enact all laws to render effective the law passed in obedience to the express authority granted. That court has held: "The design of the Constitution was to establish a government competent to the direction and administration of the affairs of a great nation, and at the same time to mark by sufficiently definite lines the sphere of its operation. To this end it was needful only to make express grants of general powers, coupled with the further grant of such incidental and auxiliary powers as might be required for the exercise of the powers expressly granted. These powers are necessarily extensive, and it has been found, in the practical administration of the government, that a very large part of the functions have been performed by the exercise of powers thus implied." (Martin v. Hunter, 1 Wheat., 304, 4 Law. Ed., 97; McCullough v. Maryland, 4 Wheat., 316, 4 Law. Ed., 579.) And as Chief Justice Marshall says: "The government which has the right to do an act, and has imposed upon it the duty of performing that act, must, according to the dictates of reason, be allowed to select the means." So if we looked alone to section 20 of article 16 of the Constitution for authority in the Legislature to pass all necessary laws to enforce prohibition and prevent illegal sales of intoxicating liquor, under all the canons of construction, instead of that section of the Constitution being a limitation on the power of the Legislature to pass needful legislation to enforce prohibition wherever adopted, the authority and power would necessarily be implied to be in the Legislature by virtue of that section of the Constitution to pass all such laws that they deemed necessary to render effective that provision of the organic law, and the choice of remedies must be left to their wisdom, so long as they do not run counter to any other provision of the Constitution. And the rule announced in the Holley case, supra, that section 20 of article 16 was an implied limitation on the powers that the Legislature would otherwise have possessed to pass laws under the police power in aid of the enforcement of the prohibition law, has never obtained in our Supreme Court, and has not obtained in this court for a great length of time. In the case of Snearly v. State (the opinion of Judge Brooks being reported in 52 S. W. Rep., 547, and the opinion of Judge Henderson, in 53 S. W. Rep., 696), the right of the Legislature to pass regulatory laws in aid of the proper enforce-

ment of prohibition was upheld. In the case of Snead v. State, 55 Texas Crim. Rep., 583, Judge Ramsey reviewed the authorities and sustains the authority of the Legislature to enact such laws. In Joliff v. State, 53 Texas Crim. Rep., 61, this court held: "It is urged by the State that the contention of appellant seems to ignore the fact that local option and non-local option territory alike have laws regulating the licensing and sale of intoxicating liquors, and that in consequence he overlooks the necessity for a general law, such as the one in question. If, however, the State contends this court should assimilate the Act in question to a law by its terms limited to local option territory, then they insist that such Act dealing, as it does, with the sale of intoxicating liquors, and being germane to the main subject and considered by the Legislature as a necessary auxiliary to the enforcement of the will of the people, as expressed by the adoption of local option, the same should be held by every test as a valid law. We are inclined to believe that both of these contentions of the State are correct. Certainly, if we are to have respect for the decisions of the Supreme Court, as declared in the case of Ex parte Dupree, 101 Texas, 150, 105 S. W. Rep., 493, this is no longer in this State an open question. In that case, in discussing the search and seizure law, which by its terms was limited to local option territory, and in view of the question there raised that said Act was unconstitutional, because in excess of the power of the Legislature, as limited by article 16, section 20 of the Constitution, in a luminous opinion upholding the validity of the law, the court say: 'The Constitution does not require the Legislature to submit to the vote of the people the law which is necessary to enforce prohibition, and it has not done so. That is a proper subject for legislative action. It has been held in this State that the Legislature can not go beyond the limits of the Constitution and prohibit the giving away of liquors within the prescribed territory, but that does not in the least interfere with nor limit the power of the Legislature to enact all suitable and necessary laws for the enforcement of the will of the people on that subject. The law in question is not subject to the objection urged.' So both on reason and authority, the contention here considered must be held adversely to appellant. This view is supported by the holding of the Court of Civil Appeals of the Second District, in the case of Clopton v. State, 105 S. W. Rep., 994."

In Stephens v. State, 47 Texas Crim. Rep., 604, it was held that the Legislature had authority to prohibit gifts of liquor to a minor in local option territory under the police power of the State. In Williams v. State, 81 S. W. Rep., 1209, and Weatherford v. State, 51 Texas Crim. Rep., 447, the law was upheld punishing a physician for giving a prescription for intoxicants in local option territory without making a personal examination of the applicant and ascertaining that he was in fact sick. The Act of 1905 prohibiting those following the occupation of storing intoxicating liquors in local option territory from permitting anyone to drink liquor on the premises was sustained in Ex parte

Massey, 92 S. W. Rep., 1083, Judge Henderson saying: "We do not understand that the police power of the State is abrogated or suspended in local option territory, or that State laws which are applicable to said territory are inoperative." In the case of Fitch v. State, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040, the authorities are exhaustively reviewed, and in an opinion written by Judge McCord he held: "All legislative power is vested in the Legislature and can not be exercised by any other body, except as provided by the Constitution. We, therefore, hold that the power to legislate for the efficient enforcement of the local option laws is not taken away from the Legislature after the adoption of local option, and that if new offenses grow out of the violation of this law that can not be covered by the laws already in existence, the duty and obligation rest upon the Legislature to see that efficient laws are passed to meet each emergency." In the concurring opinion Judge Ramsey says: "That it is within the power of the Legislature to provide ample remedies for evils and abuses growing out of the sale of intoxicating liquors in local option precincts, beyond and aside from the punishment assessed for such sales, *is no longer an open question in this court.*"

In Ezell v. State, 29 Texas Crim. App., 523, in discussing a similar question, this court held: "The reason assigned why said conviction could not occur is stated to be that section 20, article 16, of the Constitution does not delegate to the Legislature power to continue the penalty in force after the law has been repealed by vote of the people. The position assumed is not a sound one. The Legislature is not only empowered to pass such laws, but it is obligatory upon said body to pass same and make them effective. It is not a question of delegated power, but a command to that body to enact laws for the purpose and object stated in said provision of the Constitution. The authority to create the law carries with it *the power to provide adequate penalties to punish violations thereof when the laws have been put into operation.*"

This was the status of the law on this question when the writer was honored with a position on this high court, it being, as said by Judge Ramsey, *no longer an open question that the Legislature possessed the authority and power to provide ample remedies for evils and abuses growing out of violations of the local option law,* and as said by Judge Williams in the Dupree case, supra, *"the prevention of crime is one of the objects to which the most anxious thoughts and the constant efforts of thoughtful legislators are directed, and the dealing with the steps preparatory to its commission is a favorite method."*

It having been shown that this was the law of this State both by this court and the Supreme Court, and the reasoning therein in our opinion being sound, we have taken the rules therein announced as our guide. The question first came before us on motion for rehearing in the case of Ex parte Roper, 61 Texas Crim. Rep., 68, Judge Ramsey having written the original opinion before his retirement from this court. In that case we upheld the right of the Legislature to enact a law authorizing the issuance of an injunction to prevent certain premises being used

as a place in which to make sales in violation of the local option law. The right of the Legislature to enact laws to secure the enforcement of the prohibition law wherever adopted again came before us in the case of Edmanson v. State, 64 Texas Crim. Rep., 413, wherein we upheld the law prohibiting the taking and soliciting of orders for the sale of intoxicating liquors, among other things, saying: "The police power is not abrogated by the local option law, but it is the duty of the Legislature to pass all such remedial statutes as may be necessary to enforce the will of the people," reviewing the authorities. In Ex parte Flake, 67 Texas Crim. Rep., 216, 149 S. W. Rep., 146, we upheld the right of the Legislature to regulate and control the business of storing intoxicating liquors for others in prohibition territory, and in Ex parte Townsend, 64 Texas Crim. Rep., 350, 144 S. W. Rep., 628, we upheld the right of the Legislature to regulate and control the sale of non-intoxicating malt liquors in prohibition territory, saying: "The police power includes the right to regulate, control and prohibit occupations which endanger the health, morals and safety of the general public. The police power is inherent in government, and may be exercised by every sovereign State through its law-making agency, independent of any specific or general grant of constitutional express authority."

To these rules of law we adhere, and if necessary would reannounce them in full, and the cases holding to the contrary are overruled expressly, as they have often been impliedly, if not expressly, heretofore, and if the Legislature deems it necessary to regulate and control the shipment and transportation of intoxicating liquors into prohibition territory in order to more effectively prevent illegal sales and secure the enforcement of the prohibition law wherever adopted, it may do so.

Another contention made, that the provisions of the Allison Law apply to license territory as well as prohibition territory, and for this reason is void, we do not think can be sustained, and do not deem it necessary to discuss it at length. The caption of the bill and its provisions as a whole render it clear and certain that it should and does apply only to such territory as may have already or may hereafter adopt the local option or prohibition law, and this is fully shown by section 8 of the bill. As we have stated in previous opinions, when discussing the questions here involved, it is manifest that the people of the State in adopting the present Constitution authorizing the licensing of the sale of intoxicating liquors in all territory where prohibition has not been adopted, and authorizing the adoption of prohibition in any county or subdivisions thereof where the people might elect to so declare, recognized fully that it would be necessary to have different laws in the license and prohibition territory—in the license territory to regulate and control the business of selling intoxicating liquors, and protecting those who took out a license under the law; in prohibition territory, laws to prevent altogether the sale of intoxicating liquors, and the fact that this law applies only to prohibition territory does not render it unconstitutional. But the laws passed must be in aid of the enforcement of the prohibition law which apply alone to local option territory,

therefore, if a statute purporting to be passed in aid of the prevention of illegal sales in prohibition territory has no real or substantial relation to that object, it would be the duty of the courts to so declare, just as it would be to uphold and enforce a law that really is in aid of the accomplishment of that object. And so far as the provisions of the Allison bill prohibits the shipment, transportation, carriage and delivery of intoxicating liquors for sale or illegal use, it would be and is in aid of the proper enforcement of the prohibition law, and should and will be sustained. However, section 9 of the bill provides that it shall not be unlawful for any person, for the use of himself and members of his family residing with him, to personally carry liquor into prohibition territory. So that one having in his possession intoxicating liquor for his own use is declared by law not to be hurtful to the public welfare, and it is declared not hurtful for him to personally carry such liquor into prohibition territory for his own use. Thus by law it is declared not to be prohibited, and that the law does not intend to prevent one from carrying liquor or having it in his possession in prohibition territory. The question then arises: may the Legislature under the police power, when it licenses the sale of liquor in certain territory, by law make it legal and lawful for every citizen to purchase it, and by law authorize him to carry it in the prohibition territory and keep it there for his own use, regulate the manner in which he shall carry it, and prohibit him from having it conveyed by another when the liquor is intended to be used in the same way and for the same purpose for which he is personally authorized to carry it into such territory?

The police power inherent in the State has been likened unto the law of self-defense that is said to be born in each individual. As the individual has the right to protect his life, or body, from serious bodily injury, and his property which he has lawfully acquired from destruction, so the State has the inherent right under the police power to protect the public welfare from those things which would produce death or seriously affect the health of the public, or its general moral welfare. This power has always been and is difficult of exact definition. It has been well said that "it is easier to perceive and realize the existence of this power than to mark its boundaries or to prescribe limits to its exercise." The decisions of the courts show this power is of wide extension and diversity—it has been termed "the law of overruling necessity." Citizens' rights or property, as they are estimated by the public, are continually invaded by the government in its necessary guardianship of public interests, public welfare, and for the general public good. The power of the legislative branch of the government seems to be almost unlimited except in so far as the Constitution of the State has inhibited it. There are certain rights, however, guaranteed to each and every individual by the Bill of Rights and other provisions of the Constitution, and it is provided in the Bill of Rights "to guard against transgressions of the high powers herein delegated, we declare that everything in the Bill of Rights is excepted out of the general powers of government, and

shall forever remain inviolate, and all laws contrary thereto shall be void."

The right to sell intoxicating liquors, or the right to purchase or own intoxicants, may be said not to be a portion of the rights reserved, no more than the right to purchase and use opium, cocaine or other hurtful and harmful drug, but the right to purchase property which is recognized by the State as a legitimate article of commerce, and the sale of which the State legalizes by licensing is a right each and every citizen possesses in common. The Legislature could not pass a law which, while recognizing the right of the citizen in "wet territory" to purchase intoxicants, would deprive the citizen of "dry territory" of the right to purchase it when he goes to a place where the State has and does by law legalize and authorize its sale. And when he thus buys it and it becomes his property, what right has the State to say by what means he conveys it to his home? If the shipment thereof by a common carrier, or the carriage of it by another, could be said to be more inimical to the public welfare than his personally carrying it, then under the police power the State could and should perhaps regulate its carriage. In the celebrated case of Mugler v. Kansas, 123 U. S., 623, the law is thus declared:

"But by whom, or by what authority, is it to be determined whether the manufacture of particular articles of drink, either for general use or for the personal use of the maker, will injuriously affect the public? Power to determine such questions, so as to bind all, must exist somewhere; else society will be at the mercy of the few, who, regarding only their own appetites or passions, may be willing to imperil the peace and security of the many, provided only they are permitted to do as they please. Under our system that power is lodged with the legislative branch of the government. It belongs to that department to exert what are known as the police powers of the State, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety.

"It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exercise of the police powers of the State. There are, of necessity, limits beyond which legislation can not rightfully go. While every possible presumption is to be indulged in favor of the validity of a statute, Sinking Fund Cases, 99 U. S., 700 (25:501), the courts must obey the Constitution rather than the law-making department of government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. 'To what purpose,' it was said in Marbury v. Madison, 5 U. S., 1 Cranch, 137, 167 (2:60, 70), 'are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation.' The courts are not bound by mere forms, nor are they to be misled by

mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

Mr. Black, in his work on Intoxicating Liquors, says: "The keeping of intoxicating liquors in his possession by a person, unless he does so for the illegal sale of it, or some other improper purpose, can by no possibility injure or affect the health, morals or safety of the public, and, therefore, a statute prohibiting such keeping in one's own possession is not a legitimate exercise of the police power. It is an abridgment of the privileges and immunities of the citizen without any legal justification, and, therefore, void. . . . Though there is a prohibition not to sell them, yet that can not prevent a man from having a property in them for his own use, without any intention to sell them, and they may be transported through the State where there is no intention to violate the law."

If the Legislature of this State had deemed it necessary to prohibit altogether the transportation and carriage of intoxicating liquors into prohibition territory (except for medicinal, sacramental and scientific purposes) in order to render effective the law prohibiting illegal sales thereof, there might be and probably would be justification for such law, although in our opinion the validity of such a law would be one of extreme doubt, so long as the laws of the State license and authorize the sale of intoxicating liquors, and authorize its sale to all persons except minors and habitual drunkards. When a State legalizes the traffic by law, it is a legitimate article of commerce under decisions of all the courts, and when the law authorizes one to acquire, own and use it, we doubt the State having authority to do more than to prevent the owner from so using it that it may not be hurtful to the public health and public safety. But our Legislature specifically authorized each and every citizen of the State to purchase, own and acquire intoxicating liquors and to transport into prohibition territory liquors for his own use and the use of his family, and since they have not thought it proper in order to prevent illegal sales to attempt to prohibit the citizen from transporting it into prohibition territory, but specifically authorize him so to do by section 9 of the bill, can they under the police power regulate the mode of transportation he may adopt in conveying or having it conveyed for his own use to his home in prohibition territory? In what way can the mode and manner one may adopt in transporting or having transported intoxicating liquor purchased for his own use injure or affect the health, morals, safety or general welfare of the public? If the shipment, transportation and carriage of intoxicating liquors for one's own use can not by any possibility be hurtful to the public health, public morals or public safety, then it is a matter that can not legiti-

mately come within the police power of the State. And the right to have it shipped would necessarily carry the right with it for the carrier to make a delivery to the owner of the liquor, and we have ample statutory laws to prohibit and punish its delivery to any other person than the owner.

We can not give our consent to a law sought to be enacted under the police power which would make a man a criminal for an act that can in no way be hurtful or harmful to the health, morals or safety of any other citizen of the State, or his property. Under the construction contended for, it would be admitted that under the law, and necessarily so, that a citizen of San Marcos (in prohibition .territory) can come to Austin and purchase intoxicating liquors, place it in his suit case and carry it on the train with him to his home in San Marcos for his own use and the use of members of his family. The law specifically authorizes him so to do in section 9, yet it is contended, if when he gets to the depot he hands the suit case to the baggage master or express agent to be transported on the same train on which he travels, only in another coach, that the minute he hands the suit case to the express messenger or baggage master to be conveyed in the baggage car to San Marcos on the same train, he becomes a felon; the baggage master or express agent becomes a felon; the railroad company, which could lawfully carry it in the passenger coach, by permitting it to be carried in the baggage coach becomes a criminal and subject to severe penalty, and the agent at San Marcos who delivers to him his suit case with his property therein lawfully acquired under the law becomes a felon, and all may be confined in the penitentiary. In what way is it or can it be more hurtful to the public for the man to have the suit case carried in the express car or baggage coach than for him to carry it in the passenger coach? This is a matter we have never been and are now unable to perceive.

Texas, as hereinbefore stated, has dual laws in regard to intoxicating liquors. It has never declared it to be the policy of the State to prohibit one from manufacturing liquors for his own use; on the other hand, the right to do so is specifically recognized in section 8a of the bill. It has never been declared to be the policy of this State to prohibit anyone from obtaining intoxicating liquors for his own use and keeping it at his home; on the other hand, his right to do so is recognized specifically in section 9 of the bill, as such rights have always been recognized by every law passed in this State, either in regard to regulating the traffic therein, or in prohibiting its sale. We are not in position of those States whose laws have made it illegal to manufacture intoxicating liquors even for one's own use, and undertake to prohibit one having such liquors in his possession. Neither our laws, nor this law, go to that extent, but on the other hand recognizes and reiterates his right to manufacture it for his own use, to purchase it and to transport it, at least personally, into prohibition territory for his own use. In the territory where its sale has been prohibited the Legislature recognizes it as its duty to pass all laws needful to prevent

its illegal sale, and if other laws become necessary to accomplish that end, we have that faith in the Legislature to believe they will pass them as they should do. On the other hand, we have territory in Texas where the sale of intoxicating liquors is legalized by licensing dealers therein, and under this license they are authorized and permitted to make sales thereof to the general public under such regulations as are now or may hereafter be prescribed by law. So long as the laws of Texas recognize, legalize and legitimize the sale of intoxicating liquors and license dealers therein, just so long the Legislature of Texas will be powerless to pass a law which will prevent the citizens of the State from going into this licensed place and purchase such liquors in quantities and under the terms which the licensed dealer has been authorized to sell, and when the citizen purchases it at such licensed place, it becomes his property; is not subject to confiscation, nor can he be prevented from carrying it to his home for his own use; nor can he be prevented from making use of the common carriers of the country in having it conveyed to his home for his own use, unless the Legislature should arrive at the conclusion that it was proper to prohibit one living in prohibition territory from owning, keeping in his possession, and using intoxicating liquors altogether in order to prevent illegal sales thereof. This this bill does not seek to do, and the citizen, by its terms, is authorized to transport and import it into prohibition territory for his own use. Intoxicating liquor is not an article of commerce (where commerce therein is legalized by law) that its mere carriage by an express company, or baggage company, or other common carriers is dangerous to the public welfare in any sense of the word. And when the law legalizes its sale and purchase by the citizen, to undertake to say how the citizen shall carry it, or that he can not have it carried by another, is not a regulation of the intoxicating liquor, but becomes a regulation of the citizen in the management of his property acquired under the law, and seeks to control him in a matter in which the public can have no interest, and can in no sense be hurtful to the safety of the public, nor its health, nor morals, nor the general welfare of the public. But in holding that the Legislature is without authority and power to regulate the citizen as to the means to be adopted in the transportation or carriage of intoxicants purchased for his own use, at places where the State authorizes its acquisition—to his home—we do not wish to be understood as holding that if the liquor is purchased or intended for resale in the prohibition territory, or intended to be used in prohibition territory for any unlawful purpose, that the Legislature is without authority to prohibit its shipment, transportation, carriage and delivery to any person (even the owner), for such illegal purposes. We think the Legislature has authority and power to do so, and it is its duty to do so, and that it has done so by the provisions of the Allison Law, and that a proper construction of this law shows that this is all the Legislature intended to do. It is a well known rule of construction that if a bill, by all of its terms, is subject to two constructions, and by one construction it would be rendered void, yet by another construction,

of which it is equally susceptible, its terms would be within the authority of the Legislature to enact under the police power, and violative of no provision of the Constitution, it is the duty of the court to give to the Act that construction which would render it valid. What was the evil the Legislature had in mind? Not to prevent one from obtaining liquor for his own use, for the act authorizes him to get it and keep it for his use, but recognizing that liquor was being shipped into, transported into, carried into and delivered to others in prohibition territory for illegal purposes, that is, to make illegal sales thereof in prohibition territory, it was at this evil the terms of the Act were directed and which it intended to prevent in future, and which should be, and by the terms of this Act is, prohibited.

Sutherland on Statutory Construction states the "universal principle applied in considering constitutional questions is, that an Act will be so construed, if possible, as to avoid conflict with the Constitution, although such construction may not be the most obvious or natural one. The courts may resort to an implication to sustain a statute, but not to destroy it."

Black on Interpretation of Laws says: "The presumption is always in favor of the constitutionality of a statute; every reasonable doubt must be resolved in favor of the statute, not against it, and the courts will not adjudge it invalid unless its violation of the Constitution is clear, complete and unmistakable. Hence it follows that the courts will not so construe the law as to make it conflict with the Constitution, but will rather put such interpretation upon it as will avoid conflict with the Constitution and give it full force and effect, if this can be done without extravagance. If the enactment is fairly susceptible of two or more constructions, that interpretation will be adopted which will avoid the effect of unconstitutionality, even though it may be necessary for this purpose to disregard the more usual or apparent import of the language employed."

In the case of W. U. Tel. Co. v. State, 121 S. W. Rep., 194, Chief Justice Key of the Court of Civil Appeals cites a number of authorities, and reaffirms the rule "that if a statute is capable of two constructions, one of which will render it valid and the other render it invalid, the former will be adopted."

In the case of Bassett v. Mills, 89 Texas, 162, our Supreme Court, speaking through Chief Justice Gaines, said: "Where a statute is capable of two constructions, one of which would comply with a positive requirement of the Constitution, and the other leaves the duty unperformed, the former will prevail." And in the case of Galveston Ry. Co. v. Gross, 47 Texas, 428, that court held: "When a law is susceptible of two constructions, that which is constitutional will be adopted."

In our court it was held in Ex parte Mabry, 5 Texas Crim. App., 93: "When a legislative Act can be so construed as to avoid conflict with the Constitution, and give it the force and effect of law, such construction will be adopted by the courts." Again, in Ex parte Murphy, 27

Texas Crim. App., 492, it was held: "In construing a legislative Act, courts must so interpret it as to harmonize its provisions with the Constitution, if possible." This rule of construction has always prevailed in the courts of this State, and we think properly so, and the rule is upheld by all text-book writers of any note. Courts should never hold an Act of the Legislature void, unless compelled by the clear and specific language of the Act to hold that its terms are in contravention of the inhibition of the State Constitution, and if the language used in the Act as a whole is reasonably subject to a construction that will render it valid, and reach the evil intended to be suppressed, such construction should be adopted by the court and its validity upheld.

We have felt impelled to discuss these questions at length and cite these authorities by reason of the differences in opinion existing between members of this court. Our senior justice, Judge Davidson, is of the opinion that the language of the Act is subject to the construction that it prohibits the shipment, transportation and delivery of one's own liquor to him in prohibition territory, and if so, that the Act would in that event be clearly violative of the provisions of the Constitution and void; and further, that section 20 of article 16 of the Constitution should be construed as a limitation on the power of the Legislature to pass any law under the police power to affect in anywise intoxicating liquors in prohibition territory other than merely to punish for an illegal sale, as evidenced by his dissenting opinions in the Snearly, Sneed and other cases hereinbefore cited. On the other hand, Presiding Judge Prendergast is of the opinion that the proper construction to give the law is, that it prohibits the transportation, shipment, carriage and delivery of intoxicating liquors in prohibition territory, except for medicinal, scientific and sacramental purposes, and that the Legislature has the authority and power to regulate and prohibit the transportation, shipment and delivery of liquors for one's own use in prohibition territory and that this law does do so, even though the law in section 9 authorizes one to purchase it for his own use and carry it to his home in prohibition territory, as evidenced by his dissenting opinion in Ex parte Peede. To neither of these, to my mind extreme views, have I been able to give my assent, for I do not believe such to be the law, which fact has been known to my associates on the bench since the rendition of the opinion in Ex parte Muse, 168 S. W. Rep., 520. In the writer's opinion, the police power is one of the greatest and most essential powers possessed by the government, and that it is necessarily inherent in sovereignty—the power to protect the health of the citizenship of a State, the morals of the citizenship, and to insure the safety of the citizenship, and when exercised within these bounds, the judiciary, nor any other authority has the right to annul laws passed in regard to such matters when necessary for the public welfare, but when the Legislature goes beyond the proper bounds and seeks to control the individual citizen in the mode of transportation or carriage of his property to his home (whether in prohibition territory, and whether it be whisky or other property) that he has

legally acquired at points where the State has licensed and authorized its sale, when the property is not of the nature that the mere mode and method of its shipment, transportation and carriage can be injurious to the public health, public morals, public safety, nor the general public good, it has gone beyond the limits heretofore recognized as inherent in the State under the police powers. Entertaining these views, as I do, and knowing that the views I entertain in this case are not concurred in by either of my brethren, I have written perhaps at more length than was necessary, and yet I deemed it necessary and proper to do so to show why I think the Allison Law violative of no provision of the Constitution, and yet that it did not prohibit a citizen of the State from carrying or having conveyed to his home, by the usual and customary methods of conveying property, his own property that the law by express terms authorized him to acquire and to carry to his home and there use it himself, or administer to his family when he deemed it advisable or necessary.

To the rule of law hereinbefore stated, that when an Act is subject to two constructions, that the courts should give it that construction which would render it a valid law, another equally well recognized rule of construction may also be added: That we should take into consideration the evil intended to be remedied. From contemporaneous history we are made aware that wherever local option has been adopted it had, to some extent at least, become customary to ship intoxicating liquors into such territory, establishing depots therefor denominated as "cold storages" and under other nomenclatures, which said liquors were not intended for the personal use of the person receiving same, but were intended when shipped into such territory to be surreptitiously sold and otherwise used in violation of the laws of this State, and by such means render ineffectual the prohibition law. It was such evils as this that the Legislature intended to remedy, and yet it was careful in the same Act to reserve to the individual citizen his right to procure and use intoxicating liquors if he elected so to do as evidenced by section 9. And while many of us may differ as to the advisability of a citizen using intoxicating liquors, and doubtless do differ, yet with the general public policy of a State the courts can have no concern. This, the Legislature has the right to determine and must declare, and it has in every law that it has ever passed since the right to adopt local option by a vote was adopted as a part of the organic law, declared that it was not the policy of this State to interfere with the right of the individual citizen to use intoxicating liquor if he so desired, provided he did not drink it in certain public places, and did not become drunk in public places. As said by an eminent law writer, an Act can not be declared void because in the opinion of the court it violates the best public policy, nor can its terms be so construed as to make effective a public policy the court deems most advisable and for the best interests of a State, which would be in antagonism to the settled policy of the State as expressed in this and former legislative Acts. The wisdom of the policy

adopted by the State as expressed in its laws and the desirability of another and different policy are matters addressed to the legislative branch of the government, and must rest upon the intelligence, patriotism and wisdom of that body and not upon the judgment of the court. When the Legislature has declared the policy of the State, and given to the citizens, and each citizen thereof, the right to acquire intoxicating liquors and convey it to his home, the courts have no authority to seek to nullify that right by erecting and placing insuperable barriers to the exercise of the right. If it is deemed desirable to prohibit the individual citizen from obtaining and having in his possession for his own use intoxicating liquors, the remedy is with the people and not with the courts, and should not be sought to be exercised by them. Mr. Sutherland in his work on Statutory Construction says:

"In general the same rules of construction apply to Constitutions as to statutes. A statute should be so construed as to give a sensible and intelligent meaning to every part, to avoid absurd and unjust consequences and, if possible, so as to make it valid and effective. 'It is familiar rule that if the words employed are susceptible of two meanings, that will be adopted which comports with the general public policy of the State, as manifested by its legislation rather than that which runs counter to such policy.' When a general intention is expressed in a statute and also a particular ·intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception and both are to have effect in their respective spheres." As sustaining this text he cites the following authorities: Martin v. Election Commissioners, 126 Cal., 404, 58 Pac. Rep., 932; Davis v. Dougherty County, 116 Ga., 491, 42 S. E. Rep., 764; Dahnke v. People, 168 Ill., 102, 48 N. E. Rep., 137, 39 L. R. A., 197; People v. Hutchinson, 172 Ill., 486, 50 N. E. Rep., 599; Dodge v. Chicago, 201 Ill., 68, 66 N. E. Rep., 367; Boyd v. Brazil Block Coal Co., 25 Ind. App., 157, 57 N. E. Rep., 732; Arnold v. Council Bluffs, 85 Iowa, 441, 52 N. W. Rep., 347; Poor v. Watson, 92 Mo. App., 89; State v. District Court, 14 Mont., 452, 37 Pac. Rep., 9; Home B. & L. Assn. v. Nolan, 21 Mont., 205, 53 Pac. Rep., 738; Cate v. Martin, 70 N. H., 135, 46 Atl. Rep., 54, 48 L. R. A., 613; McGinn v. State, 46 Neb., 427, 65 N. W. Rep., 46, 50 Am. St. Rep., 617, 30 L. R. A., 450; State v. Cornell, 53 Neb., 556, 74 N. W. Rep., 59, 68 Am. St. Rep., 629; Hoey v. Gilroy, 129 N. Y., 132, 29 N. E. Rep., 85; Wormser v. Brown, 149 N. Y., 163, 43 N. E. Rep., 524; Portland v. Gaston, 38 Ore., 533, 63 Pac. Rep., 1051; McAskie's Appeal, 154 Pa. St., 24, 26 Atl. Rep., 60; Kolb v. Reformed Episcopal Church, 18 Pa. Sup. Ct., 477; Hayes v. Arrington, 108 Tenn., 494, 68 S. W. Rep., 44; Howard Oil Co. v. Davis, 76 Texas, 630, 13 S. W. Rep., 665; People v. Utah Commissioners, 7 Utah, 279, 26 Pac. Rep., 577; Jackson v. Kittle, 34 W. Va., 207, 12 S. E. Rep., 484; American Net & Twine Co. v. Worthington, 141 U. S., 468, 12 S. C. Rep., 55, 35 L. Ed., 821. See Ex parte Ah Hoy, 23 Ore., 89, 31 Pac. Rep., 220.

The *particular intention* is expressed in the statute under consideration that the citizenship of this State, and each individual citizen, living in prohibition territory shall have the right to procure for himself, in territory where the sale thereof is licensed, for the use of himself and members of his family, intoxicating liquors if he so desired, and we can not be made the instrument to nullify or place impediments in the way or exercise of that right so expressly given and reserved to him in this statute. Entertaining these views, we hold that the proper construction of this Act shows that it was the intention of the Legislature to prohibit, and by its terms they do specifically prohibit, the shipment, transportation, carriage (personal or otherwise) and delivery of intoxicating liquors into prohibition territory for any purpose other than for medicinal, scientific and sacramental purposes, and the personal use (and members of his family) of the person receiving same; that a law with such intent and purpose has a place in the system of laws intended to prevent illegal sales of intoxicating liquors in prohibition territory, and that the law as thus construed is valid, and violative of no provision of the Constitution.

That it does not prohibit the shipment, transportation, carriage and delivery of intoxicating liquors from a point in this State where same is authorized by law to be sold, and may be legally purchased, into prohibition territory when intended for medicinal, scientific or sacramental purposes, or the personal use of the person receiving same. Having this view of the law, and the facts of this case showing, it may be said conclusively, that appellant, A. D. Blansett, Dee Blansett, Roy Blansett and others were employed by the commissioners of Hamilton County, in working or grading the roads of Hamilton County; the tent or camp was in A. D. Blansett's yard. During a rainy spell, in which no work could be done, appellant decided to go to Waco on a trip, as he says, to see an uncle on some business, who lived there. Roy Blansett knowing this, gave him a dollar and requested him to purchase a quart of whisky, and bring it back with him. Appellant took the dollar, purchased the quart of whisky, and on his return brought it and placed it where he knew Roy would get it, and Roy did get it. There is nothing to suggest that it was the intention of appellant or Blansett to sell the whisky in prohibition territory, but the evidence and all the evidence shows that Roy Blansett desired it for his own personal use, and did so use it. Neither is there any evidence to even suggest, much less show, that appellant received any profit in the transaction, but the act was done merely as an accommodation to his friend, Roy Blansett. Had the prosecution been based on the transaction with Dee Blansett shown by the testimony, a different question would be presented, for in so far as that transaction is concerned, the evidence would show that appellant perhaps made a profit out of that transaction, but not so in the instance on which this prosecution was based. Having the view of the law as hereinbefore expressed, we do not think the facts show a violation of the law in the instance charged in the indictment, and therefore the case should be reversed and remanded.

But under this construction it may be contended that the Act would authorize two convictions for the same offense, which is prohibited by the Constitution—that if one carries whisky into prohibition territory for sale and sells it, under the law he could be prosecuted, both for carrying or transporting the whisky into prohibition territory for sale, and also be prosecuted for making a sale of it, if he sells it. We think the law authorizes a prosecution for each of said acts, and that they constitute two separate and distinct offenses, and the Legislature intended to so enact and to make the penalty so severe as to deter men from carrying or transporting whisky into prohibition territory for sale, and selling it in prohibition territory, and a conviction would and should be sustained under such circumstances for both offenses: First, for carrying or transporting it into the prohibition territory for an illegal and unlawful purpose, and, second, for making an illegal sale thereof after getting it into such territory. This is no anomaly in the law. A man breaks and enters a house for the purpose of committing theft, and after entering he does steal property of value. He may and should be prosecuted both for burglary, committed in breaking, and the theft, after the breaking. We have many such offenses in our Code, and they have always been sustained.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, JUDGE.—I concur in the reversal. The Allison bill was intended to prevent violation of the local option law and to make that law more effective, otherwise there is and was no expressed reason for enacting it. The transportation of intoxicants to the citizen for his own use can not interfere in letter or spirit with the local option law. In such case it is neither a sale nor intended sale. The citizen certainly can do by his agent the thing he himself can do innocently. Police power is not arbitrary, but is within constitutional limits, and the rule "so use your own as not to injure the rights of others or the public rights."

PRENDERGAST, PRESIDING JUDGE, dissents.

January 2, 1915.

HARPER, JUDGE.—Having read Presiding Judge Prendergast's dissent, I wish to add that I do not think there is anything said herein that can be construed as rendering invalid those provisions of the law requiring affidavits to be made by druggists and others, for we think a provision to require the owner, when he secures it from the express office, to make affidavit that he intended it for his own use would be valid, and there is nothing in the opinion that holds or is intended to hold that the law requiring such affidavits to be filed is invalid. Neither is there anything said or held herein that renders invalid the law requiring intoxicating liquors to be labeled when shipped, or to render

invalid the law making it an offense to deliver such liquors to any person other than the consignee—the owner. In fact, such law is referred to in the opinion and approved. These are reasonable regulations to prevent illegal sales. We have deemed it necessary to add this much so that it may not be gathered that we lend our sanction to this part of Presiding Judge Prendergast's dissent. But we do not deem it necessary to comment further thereon, for in our opinion he does not therein discuss any of the questions involved in a proper discussion of this case, but his dissent was apparently written in moments when he was not cool and collected, for it mainly deals in extravagant conclusions and assertions, and not with the issues herein involved.

PRENDERGAST, PRESIDING JUDGE (dissenting).—The opinion of Judge Harper herein is the severest blow to the enactment of valid laws regulating the use, handling, dealing in and sale of intoxicating liquors, and their enforcement, that has ever been rendered by this or any other court, as I see it. With all due respect, I think it is extreme and radical against their enactment and enforcement. It is directly contrary to all the legislation of this State on that subject from its creation, down to the enactment of the Allison Act. Followed to its logical sequence, it wipes the Allison Act from the statute book.

Prior to the Allison Act it was known of all men that the offices of the express companies doing business in the prohibition territory of our State were successfully used by the dealers as the distributing place of their intoxicating liquors. The express companies' offices took the place of, if they were not in reality, saloons in our prohibition territory. It was in this way, principally, the "bootlegger" got his supply of such liquor to carry on, and prospered, in his unlawful avocation of sneaking around and selling it.

It has always been the boast of the liquor dealers that "prohibition don't prohibit." That "more liquor is sold in prohibition territory after prohibition is adopted than before." In some of our prohibition territory this was, perhaps, true, in a large measure, if not wholly, because of the fact that our express companies were used by the dealers as saloons, and to stock up the "bootleggers" from day to day. These conditions became intolerable to our people in such territory, and they loudly called upon our executive and legislative departments to stop this state of affairs.

The people in our prohibition territory had constitutionally and legally, by the proper majority vote, determined they wanted such laws enacted and enforced, as would effectually make "prohibition prohibit," and prevent "more liquor from being sold in such territory after prohibition had been adopted than before." They had a right to demand such laws and their enforcement. No one had the right to say them nay. Every law-abiding citizen ought to have done what they reasonably could to respond favorably to their just demand. Our Governor, in proper response to this demand, at the first special session of our Thirty-third Legislature in July, 1913, called upon, and authorized our Legislature to enact such legislation. To the gratification of both "pro" and "anti"

said Legislature nobly responded, and enacted the Allison Act, which was approved by our Governor on August 21, 1913. This Act, in truth and in fact, had the effect to "make prohibition prohibit." It stopped the express companies from being saloons in prohibition territory. It stopped the liquor dealers from daily, through the express companies, stocking up the "bootleggers" and sending them out on their unlawful avocation. It is well known all over the State that from the time the Allison Act went into effect (or rather, was supposed to go into effect), November 17, 1913, until the decision in the Peede case was rendered, October 14, 1914, prohibition was actually and in fact in force and effect in all prohibition territory in our State; but that since then old conditions have returned—the express companies in our prohibition territory have again become saloons, and through them our prohibition territory is flooded with liquor, the "bootlegger" is thereby daily supplied, and he is again "spreading himself as a green bay tree."

As my brethren, in the Peede case, 75 Texas Crim. Rep., 247, 170 S. W. Rep., 749, from my viewpoint, erroneously held that *non-residents* of our State, through the express companies, could with impunity, ship and deliver liquor in any quantity, at any and all times, to any and all persons, provided they got it under the guise it was for their "personal use or that of their families," they *just had to hold,* that the *resident* liquor dealers of our State could also so ship and deliver it with like impunity. Hence their decision in this case.

I concur in that part of Judge Harper's opinion wherein he holds:

1. That with reference to the shipment and delivery of intoxicating liquor wholly within this State, "Our State *legislative body alone* has authority to deal, and in so far as it may be necessary to protect the public health, public morals and public welfare, *their will as expressed into law is final and supreme."* (Italics mine.)

2. "The police power includes the right to *regulate, control and prohibit occupations* which endanger the health, morals and safety of the general public. The police power is inherent in government, and may be exercised by every sovereign State *through its law-making agency,* independent of any specific or general grant of constitutional express authority." Again, "the police power is not abrogated by the local option law (constitutional provision), but it is the duty of the *Legislature* to enforce the will of the people." (Italics mine.)

3. That under section 20, article 16 (our local option constitutional provision), "the *Legislature has not only the authority but it is under obligation to pass all such laws as may be necessary to render that right effective—to pass all needful laws to prevent illegal sales."* That "the purpose of prohibition is to prevent the thing prohibited, and this provision of the Constitution prescribes no scheme of legislation by which this may be done, *but leaves the choice of methods to the law-making power. There is nothing in the provision which should be construed as denying the power to prevent the sales which are prohibited by any legitimate remedies appropriate to that end. Prevention of crime is one of the objects to which the most anxious thoughts and the most*

*constant efforts of thoughtful legislators are directed, and the dealing with the steps preparatory to commission is a favorite method."* And;

4. "Instead of section 20, article 16, being an implied limitation *on the power of the Legislature to pass all necessary laws to render effective the prohibition law* wherever adopted, if the *Legislature* had not already possessed the authority by virtue of being the representation of sovereignty the authority to pass all necessary law, to render effective the prohibition law wherever adopted, would be necessarily implied by virtue of said provision."

But what does it avail to hold in general platitudes, the *Legislature* unquestionably has all this power and authority and duty, and then when it properly exercises that power and authority and complies with that duty, and has enacted a valid law which, if enforced, *will prevent the unlawful sale* of liquor in prohibition territory, to say to it, and the people in such territory, "Oh! no; you have gone too far (or not far enough). You have enacted a law which will actually make 'prohibition prohibit,' and which will prevent the express companies from being saloons, and the 'bootlegger' from, through the express companies, daily stocking up, and plying his unlawful avocation in our prohibition territory, and thereby *actually prevent sales* of liquor in such territory. As *you* have done this, *we* will now hold, that the *judges of this court, and not you,* have the say of what law you may pass to effect these objects,—*we* will hold that *you* shall not *thus* prevent unlawful *sales* in such territory. *You may* do so *some other way,* but not *this way."* Of course this is not the exact language of the opinion herein, but as I see it, is unquestionably to that effect.

In other words, as I see it, the effect of the opinion herein is to tear from the statute book the Allison Act, because section 9 thereof permits "any person for the use of himself or the members of his family residing with him to *personally carry* such liquor" into prohibition territory. That because the law does not expressly say to every person, "touch not; taste not; handle not" the unclean thing, therefore the Legislature can make no *reasonable regulation* by which you can touch and taste it, and yet *prevent you* and others from making *unlawful sales* thereof.

Both the legislative and executive departments of our State,—the legislative by enacting, and the executive by authorizing and approving the Allison Act, under their constitutional oaths, which is the same the judges of this court take, said that said Act and section 9 thereof, was a *reasonable regulation,* and had for its object, and would have the effect, *as it did have the effect, to prevent unlawful sales of liquor in the prohibition territory of this State.* But Judges Harper and Davidson, in substance, say: "Nay, verily—we will say it will have no such effect, and, therefore, *our say* shall prevail over what both you other two great departments of this State say."

By this decision I think the people of the State must take notice that where our Constitution says the *Legislature alone* shall have power and authority to enact laws to enforce prohibition as in *its judgment* is best,

and it is the *bounden duty of the Legislature* to do so, yet, henceforth, two members of this court can substitute *their* judgment for that of the *Legislature and Governor,* and that hereafter when the legislators want to enact such a law they must first get this court, in advance, to tell them that their judgment accords with that of the judges of this court. In some States such an emergency, as to the constitutionality of proposed legislation is provided for, but, of course, where that is the case, provision ought to be made whereby the judges will stand "hitched"—be concluded by their advance opinion. Our Constitution provides for no such matters. It seems to be customary with us that if the legislators are in doubt of the constitutionality or validity of a proposed law to sometimes submit such questions to our Attorney General's department; and likewise, after an Act is passed by the Legislature, and is submitted to the Governor for his approval or veto, if in doubt, the Governor submits the question to the Attorney General. Of course, the Attorney General's opinion is not conclusive nor binding on either the legislators or Governor, nor is the opinion of either, or all of them, binding on this court, or any member of it—it merely may have weight and be more or less persuasive.

The State of Mississippi has prohibition laws in some of its territory just like our laws. For the purpose of more effectively preventing unlawful sales of liquor therein, it passed a law making it an offense to sell malt liquor, which has no alcohol whatever therein, in such territory. The Supreme Court of the United States in Purity Extract Co. v. Lynch, 226 U. S., 192, expressly held said law valid, saying: "It was competent for the *Legislature* of Mississippi to recognize the difficulties besetting the administration of laws aimed at the prevention of traffic in intoxicants. . . . In thus dealing with a class of beverages (beer) which in general are regarded as intoxicating, it was not bound to resort to a discrimination with respect to ingredients and processes of manufacture which, in the endeavor to eliminate innocuous beverages from the condemnation, would facilitate subterfuges and frauds and fetter the enforcement of the law. A contrary conclusion, logically pressed, *would save the nominal power while preventing its effective exercise.*" Further saying: "With the wisdom of the exercise of that judgment (of the Legislature), *the court has no concern. . . . To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislative—a notion foreign to our constitutional system.*"

That court cites many other cases in that opinion, all to the same effect. And to the same effect is *Patsone, etc., v. Penn, etc.,* 232 *U. S.,* 138, reported in the issue of February 15, 1914, of the Law. Co-op. U. S. Supreme Court advance opinions. In my dissenting opinion in the Peede case I cite and quote some of them. They are applicable here.

Carried to its necessary logical sequence, Judge Harper's opinion herein makes void and invalid all those provisions of the Allison Act which makes it an offense for any druggist, owner, etc., of any educational, etc., institution, hospital, owner, etc. (secs. 7 and 13), to make the affidavit therein required; and also that provision in said sections

which makes it an offense for any of such persons to fail or refuse to file such affidavit with the clerk, because, as the Legislature has made it lawful for said persons to get liquor for their lawful uses, it is without authority to hamper them with making or filing such affidavit. So, also, would those provisions of our statute making it an offense to label shipments of liquor to prohibition territory (art. 606, P. C.), and making it an offense to deliver such shipment of liquor to any other than the consignee in person, and other of our laws, because as every person has the right to get liquor for his own use in any and every way and in all quantities, the law must not hamper him by any such restrictions as will make it the least inconvenient to him to get liquor, even though the *Legislature* is trying its best, by such regulations, to thus prevent the *unlawful sale* of such liquor.

But, as I see it, it is entirely useless for me to further discuss the question. The fiat has gone forth that the Allison Act must be held invalid and void, at least so far as it makes prohibition prohibit, and it is so held in Judge Harper's opinion in this case, and in the companion case of Ex parte Lewis Hopkins, in an opinion written by Judge Davidson, this day delivered.

I most respectfully but earnestly dissent.